<u>AFFIDAVIT OF RECORD CUSTODIAN</u>

I, Brian Allen Barker, hereby declare as follows:

1) I am a custodian of records for the Federal Bureau of Investigation (FBI), Criminal Justice Information Services Division's National Instant Criminal Background Check System (NICS) Section in Clarksburg, West Virginia. I have also reviewed any and all information maintained by the NICS Section regarding an individual named "Eric Stefan Clark."

2) Under the Brady Handgun Violence Prevention Act of 1993 (Brady Act), the U.S. Attorney General was charged with establishing a system, NICS, which federal firearms licensees (FFLs) must contact for a background check (NICS check) prior to transferring a firearm to a non-licensee. NICS is consulted to determine if information available to NICS demonstrates that the transferee is prohibited from receipt or transfer of a firearm under Title 18, United States Code (U.S.C), section 922(t). The Brady Act required the U.S. Attorney General to establish NICS on or before November 30, 1998. The authority and power vested in the U.S. Attorney General to perform this function has been delegated to the FBI pursuant to Title 28, Code of Federal Regulations (C.F.R.), sections 0.85 and 25.3. Guidelines pertaining to the establishment, maintenance, and use of NICS are set forth in 28 C.F.R. §§ 25.1 through 25.11. NICS became operational on November 30, 1998.

3) Under 28 C.F.R. § 25.6(b) and (d), a NICS check may be conducted by either the NICS Section or a state or local law enforcement agency serving as an intermediary between an FFL and the FBI. These intermediaries are referred to as points of contact (POCs). POCs are designated by state statute, regulation or executive order. FFLs are required to contact either the NICS Section (through the contracted call center or the "NICS E-Check" system), or the designated POC, for a NICS check prior to the transfer of any long gun, handgun or "other" type of firearm to a non-licensee, unless a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) alternate permit is presented at the time of the sale or transfer.

4) When an FFL contacts NICS to initiate a NICS check for a subject aged 21 years or older, three electronic databases are searched which may reveal the existence of records, as described under 18 U.S.C. 922(t), which demonstrate the non-licensee is prohibited from receipt or possession of firearms. The primary databases searched during NICS checks are the: (1) Interstate Identification Index, which provides access to criminal history records; (2) National Crime Information Center, which contains records of wanted persons, subjects of protection orders, and other persons who pose a threat to officer and public safety; and (3) NICS Index (or NICS Indices), which contain information on prohibited persons subject to federal and state firearm prohibitions. See, e.g., 28 C.F.R. §§ 25.2 and 25.4. Records contributed to these national databases are modified, cancelled, and added daily.

5) For U.S. Citizens who are at least 21, if the potential transferee's name does not match to any record searched by the NICS, the NICS Section will provide the FFL with a unique NICS transaction number (NTN), which is electronically generated by NICS, and provide the FFL with the response of "proceed." The NICS-generated response, indicating no records have been

1

found, is also referred to as an "immediate" proceed. However, for non-U.S. Citizens, the transactions are delayed in order to allow ICE to conduct a search and respond as to the prospective transferee's immigration status. While not relevant here, federal law also requires further research of state and local authorities when the potential transferee is under 21 years of age. See 18 U.S.C. § 922(t) and 34 U.S.C. § 40901(l).

6) If the potential transferee's name is electronically matched with a potentially prohibiting record contained in any of the three databases or the prospective transferee has claimed non-U.S. citizenship, the NICS will provide the FFL the NTN and the Brady transfer date and delay the transaction. The transaction will be transferred into the NICS E-check for processing. If the NICS Section is unable to determine whether a delayed transaction should be denied within three business days of the initiation of a background check, the FFL is not prohibited under federal law from transferring the firearm, pursuant to 18 U.S.C. § 922(t)(1). As with above and not relevant to this matter, further delay may be necessary for persons under 21 years of age. See 18 U.S.C. § 922(t) and 34 U.S.C. § 40901(l).

7) For U.S. citizens, upon confirmation that a record demonstrates an individual is not prohibited from receiving a firearm, the NICS Section will inform the FFL to proceed the transfer of the firearm and to record this answer on the ATF Form 4473. A POC is required to submit a NICS transaction determination message to the FBI for transactions that are newly initiated by the end of the operational day on which they were initiated. With the exception of permit checks, newly created POC NICS transactions that are not followed by a determination message (deny or open) before the end of the operational day on which they were initiated will be assumed to have resulted in a proceed notification to the FFL. See 28 C.F.R § 25.6(h). The NICS will destroy records regarding these POC determinations in accordance with 28 C.F.R § 25.9.

8) Upon confirmation that a record demonstrates an individual is prohibited from receiving a firearm, the NICS Section will inform the FFL to deny the transfer of the firearm and to record this answer on the ATF Form 4473.

9) For those transactions in which the NICS Section cannot provide a definitive response of either proceed or deny, the transaction will be placed in a "delayed" status for further research. The NICS Section conducts research on delayed transactions to determine whether the record(s) in question demonstrates that receipt or the transfer of a firearm by the potential transferee would violate 18 U.S.C. § 922(t).

10) The Brady Act, specifically 18 U.S.C. § 922(t)(2)(C), requires all NTNs and their creation dates be retained indefinitely. In addition, the FBI, pursuant to 28 C.F.R. § 25.9, is required to maintain an automated NICS Audit Log of all incoming and outgoing transactions that pass through the system relating to the transfer of a firearm to include the type of transaction, the time and date of inquiry, identifying information about the prospective transferee, and the NTN. The NICS Audit Log is used to conduct audits of the use and performance of NICS.

11) A review of the NICS Audit Log yielded the following results for "Eric Stefan Clark."

    a. On 6/15/2021, Mr. Clark attempted a firearm purchase, NTN 1022FCP1L, and the transaction was placed into a "Denied" status. Mr. Clark appealed that decision and on 8/27/2021 the transaction was overturned and placed into a "Proceed" status. The overturn was based upon information indicating Mr. Clark received a restoration of firearm rights in the state of Kansas for his felony conviction for date of arrest 2/13/2002.

    b. The Audit Log reflected three prior "Denied" transactions for Mr. Clark that do not indicate an appeal was filed. The date of initiation for those transactions is as follows: 10/23/2014, 4/30/2020 and 9/10/2020.

    c. Since 6/15/2021, Mr. Clark has attempted five firearm purchases with the most recent coming on 4/5/2023, NTN 102WLW1BP. All of those transactions were placed into a "Proceed" status. The transactions experienced an initial delay; however, all transactions were finalized and placed into a "Proceed" status within 24 hours of receipt of the background check. The initial delay was due to Mr. Clark's descriptive information matching information to a criminal history record with potentially prohibiting information. The subsequent reviews determined Mr. Clark was not a prohibited person.

12) In an effort to prevent those extended delays, the opportunity to submit a Voluntary Appeal File (VAF) application is being offered. The VAF is an option for individuals to request that NICS retain their information and receive a "unique personal identification number" (UPIN). The individual can then use the UPIN for future NICS background checks and, provided no new background issues arise after the UPIN was issued, the UPIN will help prevent future extended delays or erroneous denials in their attempts to possess or receive a firearm.

13) To address Mr. Clark's medical marijuana concerns, 18 U.S.C. § 922(g)(3) establishes a federal prohibition for an individual who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802). Currently, if information is obtained through the course of research or other means that an individual is in possession of a state-issued medical marijuana card, this establishes a prohibition under 18 U.S.C. § 922(g)(3).

In accordance with 28 U.S.C. § 1746, I affirm under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of August 2023

Brian Allen Barker
Lead Legal Administrative Specialist
NICS Section
Clarksburg, West Virginia