FILED
U.S. District Court
District of Kansas

AUG 23 2023

Clerk, U.S. District Court
By [signature] Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ERIC S. CLARK, )
Plaintiff, )
v. ) Case No. 23-2170-JAR-RES
MERRICK GARLAND, *et. al.* )
Defendants. )

**RESPONSE TO
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT (ECF 12)**

## I. All claims by Plaintiff are based on the premise that courts should follow the original meaning of the Second Amendment at the time it was ratified.

The motion to dismiss (ECF 12) contained mention of:

> "Plaintiff's broad claim that the Second Amendment provides a virtually unqualified right to keep and bear arms and that courts should adopt his Second Amendment test rather than the Supreme Court's" ECF 12 at 23.

The motion to dismiss does not identify the specific "his Second Amendment test" to which this above mention applies and; use of "test" in the singular form leaves plaintiff ("CLARK") guessing. To the extent the statement refers to replacing the test of text, history and tradition, CLARK denies any claim that courts should adopt some other test. As to any and all claims made CLARK, the core basis of such claims are that the original meaning of the Second Amendment at the time it was ratified should be adopted by the courts and that is consistent with the averred intention of the Supreme Court of the United States ("Supreme Court") as indicated in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) ( "Thus, "post-ratification adoption or acceptance of laws that are *inconsistent* with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Heller*, 670 F. 3d, at 1274, n. 6 (Kavanaugh, J., dissenting);") To the extent any precedent (precedent, not mere dicta) of the Supreme Court in inconsistent with that original meaning, this court can and should acknowledge the inconsistency but, at the same time, also affirm that this court is duty bound to follow *precedent* of the

Supreme Court. The same is true for any *precedent* the United States Court of Appeals for the Tenth Circuit. To be absolutely clear, this trial court *should* follow all *precedents* of both, the Supreme Court and the Tenth Circuit and; this court should do so without fail. (Forgive CLARK for stating what this court already well knows, as he feels prompted to state it anyway based on the motion to dismiss raising the issue. )

To the extent the statement refers to tests of "in common use" or "dangerous and unusual weapons", CLARK is unaware of any part of the motion to dismiss that seeks to apply such tests in that CLARK does not understand the motion to dismiss to be arguing that the firearms CLARK sought, and still plans to seek (and/or restore), are not in common use or that such firearms are dangerous and unusual. Clark would request the court to allow further briefing before making any decisions using those tests or any balancing test.

## II. CLARK falls within the scope of protection of the Second Amendment

It is unclear whether the government is arguing that CLARK falls outside of the scope of those whom the Second Amendment protects by stating "In 2003, Eric Clark was convicted of a felony - "involuntary manslaughter-DUI" - in Kansas and briefly imprisoned. (*Clark v. Lynch*, 16-4037-SAC, Doc. 22, at 2.)" ECF 12 at 7.

That first and only felony conviction of CLARK (in his 63 year) was an "involuntary" offense which stemmed from a lose-lose situation concerning an automobile accident for which CLARK wanted to help bring closure to one certain family of the other driver that had lost a loved one. Others indicated a desire for the court's leniency in any punishment. There was no alcohol involved but CLARK had medication and that was used to address the DUI element. There was evidence which might have exonerated CLARK ( See Case No. 2: 17-cv-02279-HLT, ECF 133 at page 60) but CLARK did not seek to introduce it or to testify at trial at all.

The motion to dismiss asserted that "a long tradition exists of viewing intoxication as a

condition that renders firearms possession dangerous and accordingly restricting the firearms rights of those who become intoxicated." ECF 12 at 29. CLARK has no disagreement with this but would add clarification that the restrictions applied only during the period of intoxication, not longer. The restriction was in effect while a person was intoxicated but the restriction could last only as long as the intoxication lasted, that is, only when the person is a user of an intoxicant. A person is a user of an intoxicant when the person is *using* an intoxicant.

**III. CLARK has standing for all claims**

If CLARK has standing for any subsection of 18 U.S.C. 922, then he has standing to challenge the entirety of 18 U.S.C. 922 on the basis that it is an invalid enactment because of exceeding the enumerated and limited powers of Congress because if the entirety lacks lawful authority, then any lesser parts do as well. The factual allegations concerning retrospective harm of past delays is fairly traceable to section 922(t) is not factually disputed, rather it is disputed as to the length and permissibility of various delays in relation to the Second Amendment right to keep and bear arms. If there is no precedent that has positively held (not just offered non-binding presumptions or dicta) that the delays as pled (i.e., the factual allegations in the Complaint) are constitutionally permissible, then a claim has been stated, that is, there is allegation of concrete injury for which relief could be granted. It would then fall to a merits determination of the "stated claim" with opportunity to more fully present evidences rather than treating a motion to dismiss as a motion for summary judgment.

The motion to dismiss asserted that "Plaintiff also makes vague, general claims that Defendants will possibly deny him firearms in the future." ECF 12 at 20. This is incorrect. CLARK made a clear and specific claim concerning future attempt to purchase firearms through an FFL, not a vague or general claim. Did CLARK specifically identify the models of the firearms or the name(s) of the FFL(s)? No, but every fact of a claim need not be alleged in a

Complaint in order to state a claim in a notice pleading and the federal system uses notice pleading. CLARK's assertion of threat of future denials is supported by specific factual evidence of a series of past delays and denials. Even if there was absolutely no threat of *future* delays or denials, CLARK has a concrete injury of *retrospective* delays in exercising his right to keep and bear arms. Further, there have been untenable delays (past and future) even if all of the transactions were "instantly" proceeded. See Complaint which intimates that when one is under serious threat of death or bodily injury, every second counts. The time necessary to fill out the Form 4473 and for the FFL to input that information and get a response takes more time than an evildoer needs to enter the FFL establishment and cause a need for CLARK to engage in armed self defense. See also section of the Complaint (ECF 1 at 81-84) concerning the balancing of harms through use of claims to "DE MINIMUS" .

The motion to dismiss also asserted that

> '*Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F. Supp. 3d 1086, 1097 (D. Kan. 2015) ("Where a plaintiff alleges mere 'some day' intentions to engage in certain conduct, without any specification of *when* the some day will be, any future harm that might flow from that conduct is necessarily conjectural or hypothetical rather than imminent.")(internal quotation marks omitted)' ECF 12 at 20.

CLARK does not hold a 'some day' intention. A reasonable inference of the Complaint is that CLARK will consummate his intention soon after he finds that prosecution would be enjoined for consummating that intention. See Complaint at ¶17, "CLARK would have done so already but for the potential enforcement of 18 USC § 922(g)(3) against CLARK." It was also stated that "Plaintiff rests his standing for challenging 18 U.S.C. § 922(d)(3) (sic) upon this yet-to-be-enacted law." ECF 12 at 20-21. This is incorrect. CLARK indicated that until marijuana is illegal in Kansas he would make travels to another state where marijuana is legal.

The motion to dismiss asserted "Plaintiff claims waiting periods of "over 180 days" (Doc. 1, ¶ 29); such lengthy delays are not possible as regulations require delayed transactions to

purge from NICS before day 90. *See* 28 CFR 25.9." ECF 12 at 19. This claim to "not possible" is simply incorrect in practice as it leaves out that there is also a thirty day limit on attempting to transfer before requiring another background check. CLARK purchased a firearm and was delayed or denied multiple times and was unable to make the over two hour round trip to the FFL to attempt to receive his firearm again before thirty days elapsed. That inability to complete the transfer within thirty days prompted the FFL to start over, i.e., to follow the requirement of law that another check be run before transfer could lawfully occur . . . and then CLARK was delayed similarly again and again. This repeating cycle can continue nearly indefinitely if a person is unable to make frequent visits to the FFL. Perhaps there are those live in a city nearby to an FFL for whom the trip to the FFL does not require planning and significant time and resources for travel. The FFL in Lyndon, Kansas had the firearm CLARK sought when other FFLs may not have. CLARK did not contact every FFL to see which FFLs had the desired firearm and CLARK chose to buy it from an FFL who is fairly well known to CLARK as CLARK has been to his family home on a number of occasions. And once purchased, it was not reasonable for CLARK to receive the purchased firearm from some other FFL. The motion to dismiss also asserted that 'any delay over the third business delay would be due to either the FFL's choice not to transfer a firearm which had not received a "Proceed" response, or any applicable state law extending initial delay of a transfer' ECF 12 at 20. This is a false dichotomy as the delay could be due to practical reasons such as what was explained above associated with the thirty day limit. That thirty day limit was not mentioned by the offered dichotomy. The motion to dismiss stated that "since June 15, 2021, and up through April 5, 2023, Plaintiff's NICS transactions have all been proceeded within 24 hours by the NICS Section." ECF 12 at 20. This fails to state that CLARK has been delayed while at the FFL or take into account that once CLARK has returned home without the firearm, even if proceeded immediately after CLARK returned home, CLARK must

arrange time and resource to attempt to make another trip. Perhaps the government is arguing that it is mandatory to place a new trip to the FFL at the top of one's priority list and budget considerations if one wishes to retain the right to keep and bear arms. Additionally, that thirty day window of time to complete a transfer after a "Proceed" response does not alleviate the burden of other decisions CLARK must make with the uncertainty of being "Denied" yet again which can cause forfeiture of sums on money by merely receiving a "Denied" response caused by implementation of 18 U.S.C. 922(t) and that is so even if the response is later amended to a "Proceed". See factual allegation in the Complaint at ¶32.

It was also argued that "pre-enforcement challenges require a case to be ripe enough such that a Plaintiff would almost certainly face prosecution if they engaged in the prohibited conduct" ECF 12 at 21. This is apparently an assertion that 18 U.S.C. 922(g)(3) would readily escape prosecution but there is no basis for that conclusion as 18 U.S.C. 922(g)(3) is currently being enforced in cases too numerous to mention. The case of United States v. Patrick Darnell Daniels, Jr. being one recently prosecuted case. See United States District Court for the Southern District of Mississippi, No. 1:22-CR-58-1. That particular case was taken on appeal to the Fifth Circuit of the United States Courts of Appeals (No. 22-60596). On August 9, 2023, the Fifth Circuit stated "**we hold today that 18 U.S.C. § 922(g)(3)**, a decades-old felony provision of our federal firearms law, is **unconstitutional** as applied to Mr. Daniels"(emphasis added). Even though that federal circuit issue that ruling, that would only reasonably deter enforcement within the Fifth Circuit (TX, LA and MS) much like enforcement of the Bumpstock rule. CLARK inquired earlier this year about this and was simply directed to the webpage about the final rule. The Fifth Circuit jurisdiction does not include Kansas, nor does it include Colorado where CLARK has indicated he would have already gone *but for* enforcement of 18 U.S.C.

922(g)(3). The motion to dismiss also claimed that

> "even if Plaintiff became a user of medical marijuana today, such use would still be unlawful under Kansas law. For Plaintiff's cause of action under § 922(d)(3) (sic) to be ripe, Plaintiff must refile if and when Kansas has enacted a medical marijuana law or amend his complaint to challenge § 922(g)(3) without the cover of a medical marijuana statute." ECF 12 at 21.

This fails to account for the current ability of CLARK to go to Colorado and use marijuana (i.e., become a user of marijuana) legally there *but for* the existence of 18 U.S.C. 922(g)(3) and fails to account for the factual allegation by CLARK that he would have already done so but for the existence of 18 U.S.C. 922(g)(3). See the Complaint at ¶17 beginning on page 11. The claim is ripe and CLARK is eager to go to Colorado to seek potential pain relief there through use of marijuana in that State. Evidence of the reason for CLARK having pain was included with the Complaint. See Exhibit B at ECF 1-3. As to the *why* and *how* (including comparable burden) concerning the regulation of controlled substances and the restrictions on those who use them: WHY: if the real purpose of regulating controlled substances was to exercise control over certain populations (such as blacks and many of those speaking against war) then the regulations represent an indirect violation of Equal Protection and Free Speech. And, that those populations were the societal problem perceived by the government to be addressed, that is a very different societal problem than any historical analogues from the founding era concerning risk of dangerous conduct by a person. See Complaint at 89-90 concerning John Ehrlichman, which points toward evidence that the government lied about the "why" of regulations on controlled substances. That is, the regulations were not truly about dangerous people but rather about those who disagreed with their policy choices about war and those who had a certain skin color. CLARK has a niece with white skin and her precious daughter's skin is black. That laws still exist which were enacted based on that difference is a reprehensible stain on our country.

Even presuming the legitimacy of the why and even presuming the "why" is a perfect match, the "how" differs significantly, like the difference between night and day. HOW: *Bruen* addressed how the societal problem of dangerous people were addressed by surety laws describing that 'the surety statutes *presumed* that individuals had a right to public carry that could be burdened only if another could make out a specific showing of "reasonable cause to fear an injury, or breach of the peace." ' and noting that "[t]hese laws were not *bans* on public carry, and they typically targeted only those threatening to do harm." (emphasis in original) Thus, those laws required individualized assessment *before* the right to bear arms could be restricted and even if that showing was made, the burden was quite different. BURDEN: *After* the required individualized assessment was made, the person simply had to post a bond and was *not* restricted from exercising their right to keep and bear arms. Further that bond would be returned in no less than six months, leaving no burden at all. And the person also had the right to appeal the dangerousness finding during that six month period.

> "even on such a showing, the surety laws did not *prohibit* public carry in locations frequented by the general community. Rather, an accused arms-bearer "could goon carrying without criminal penalty" so long as he "post[ed] money that would be forfeited if he breached the peace or injured others—a requirement from which he was exempt if *he* needed self-defense." *Wrenn*, 864 F. 3d, at 661." *Bruen* at pp.47-48.

Notably, the standard historically used to determine dangerousness was whether or not there was "reasonable cause to fear an injury, or breach of the peace" and was individualized, not categorical. Section 922(g)(3) makes a categorical finding of such dangerousness which could sweep in a great-grandmother who only uses marijuana in her house to alleviate pain and she never leaves the home except to attempt to purchase a firearm for self defense from an FFL that she has known most of her life. Is there really "reasonable cause to fear an injury, or breach of

the peace" from such a person and can that assessment be legitimately made without knowing any other particulars about her situation than the fact that she uses marijuana?

In regard to 18 U.S.C. 922(k), the motion to dismiss argues that

> "Plaintiff also alleges that he intends to restore an unidentified rusty firearm and obliterate its serial number to make it useable. Plaintiff provides no further details about the firearm and does not explain why he would need to obliterate the firearm's serial number to make it useable or how he plans to do so." ECF 12 at22.

The Complaint provided the factual allegation that "CLARK would restore a rusty firearm that can be purchased outside of CLARK's State of residence that will require CLARK to remove or alter or obliterate the rusty firearm's manufacturer's serial number in order to safely use the firearm for the purpose of self defense in his home." Perhaps providing a video of a rusty firearm being restored to a safe and usable form would offer the details of seeming concern but that level of detail is not required to place defendant on notice of the claim under the Federal Rules of Civil Procedure. CLARK alleged facts of intended conduct and alleged engaging in similar conduct in the past but without revealing details as is CLARK's right as protected by the Fifth Amendment against self incrimination. The motion to dismiss goes on to assert:

> "Indeed, Plaintiff's pleadings are so nondescript that defendants cannot ascertain any critical facts that could be influential to or even dispositive of Plaintiff's claim, such as the model of the alleged firearm, the condition of the serial number, or Plaintiff's planned method to restore the firearm." ECF 12 at 21-22.

Defendant would apparently prefer that CLARK go ahead and commit the specific conduct prohibited by section 922(k) and then identify the specific firearm and then place all of those details into the complaint. Would a "chilling effect" injury be ripe at that point? Or would it be too late to be chilled and, instead, a new prosecution commence with volunteered evidence for which the concrete injury would be much greater? Please excuse CLARK if that appears

to be an untenable course to seek relief for a chilled right.

If it is actually true that "defendants cannot ascertain any critical facts that could be influential to or even dispositive of Plaintiff's claim" then perhaps CLARK should hint that one critical fact is that CLARK is chilled from engaging in conduct proscribed by the challenged law and another critical fact is that CLARK would engage in the conduct if the law was not in force. When a law with possible criminal consequences causes a chilling effect what more detail is there to provide that would be considered critical to stating a claim for relief? The omission of engaging in conduct is the harm, no different than when one is chilled from speaking. And when that harm concerns a fundamental right, it is ordinarily considered irreparable harm. You cannot go back in time to say what you would have said. You cannot go back in time to defend yourself from an attacker. And no amount of monetary award can buy time travel.

The motion to dismiss fails to provide any distinctly similar historical analogue from the founding era to justify 18 U.S.C. 922(k) being constitutional. In *United States v. Trujillo*, Dist. N.M. 21cr1422, a case in which the court relied on some authority pre-dating *Bruen,* the government argued (See N.M. 21cr1422 ECF 77 at 9) that the "[d]efendant has not asserted any lawful purpose served by obliterating a serial number on a firearm." In the present case, CLARK has positively asserted a lawful purpose served by obliterating a serial number. See ECF 1-2 at ¶21. The "analogous enough" conclusion in *Trujillo* is inconsistent with use of "distinctly similar" in *Bruen*. The 1631 Virginia law mentioned concerning "recording" (ECF 12 at 32) arms was enacted distant from 1791 and, more importantly, that *inventorying* did not require serialization, that is, did not require any physical markings on any "armes". See from https://archive.org/details/statutesatlargeb01invirg/page/174/mode/2up :

> "It is ordered and appaynted, That the commanders of all the several plantations, doe upon holy days exercise the men under his comand, and that the comanders yearlie doe likewise uppon the first day of December take a muster of theire men, togeather with the women and children, and theire ages, countrys, and towns, where they were borne, with the shipps they came in, and the yeare of the Lord, as also of armes and munition, corne, cattle, hoggs, goates, barques, boates, gardens, and orchards, and yf they shall make default, to be censured by the Governor and Counsell."

The *Trujillo* court mentioned both, this 1631 statute and the case of *Teixeira v. City of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017), in relation to the firearms trade (i.e., commercial sales). But section 922(k) is not limited to regulating the firearms trade and provides for criminalizing conduct of people who fall within the plain text of the Second Amendment.

## IV. *Bruen* did NOT validate as constitutional any licensing schemes, background checks, or any "presumptively lawful" regulatory measures and; *Bruen* did NOT validate as constitutional any of the statutory provisions challenged in the Complaint including the entirety of 18 U.S.C. §922

The motion to dismiss offered that '*Bruen* approved the constitutionality of "shall-issue" licensing regimes that "require applicants to undergo a background check or pass a firearms safety course" ' ECF 12 at 26 That description of a *Bruen* approval implies a holding by the Supreme Court of the United States not found in any holding of the court. A concurrence by two Justices which describes their reasoning or opinion are not holdings of the court. A minority concurrence cannot, and does not, hold precedent of the court. This claim to the contrary reflects a fundamental misunderstanding of law and precedent. In addition, on the other side of the coin – so to speak - later decisions of an appellate court might abrogate a portion of a prior decision without the court explicitly stating that it is overruling or abrogating as holding.

The motion to dismiss also argued that "*Bruen* does not cast doubt on firearms restrictions that prevent non-law-abiding individuals from obtaining or possessing firearms." ECF 12 at 26. Regardless of doubt or no doubt, *Bruen* holds that firearms restrictions are to be put to the test, a certain specific test, a test of text, history and tradition. As to the text, "the

people" refers to the entire political community governed by the Constitution. As to the history and tradition, the government bears the burden to show a distinctly similar analogue to the modern day law being challenged, the modern law cannot simply be presumed as lawful. When prior presumptions of the court are directly challenged, the opportunity to continue the presumption fades away and the time to test the presumption arrives. Use of "presumptively lawful regulatory measures" does not mean that any certain regulatory measure has been determined to be lawful, but means there is merely a presumption. When challenged, that triggers the time to make a determination and that determination is made by putting the regulation to the test, the test of text, history and tradition.

The motion to dismiss asserted that "Under *Heller* and *Bruen*, medical marijuana users do not possess a constitutional right to possess firearms." ECF 12 at 26. That is a mere assertion. To test that assertion means the court must apply the test of text, history and tradition, and it is the government's burden to provide the relevant evidence for the test.

The motion to dismiss offered that 'A 1662 English law allowed lieutenants to disarm "any person or persons" judged "*dangerous to the Peace of the Kingdome*." 13 & 14 Car. 2, ch. 3, § XIII (1662) (emphasis added).' ECF 12 at 29. Here, CLARK agrees with this idea generally that dangerous people can be disarmed but defendant's use of 'judged' implies that a court makes that determination on an individualized basis. If that is what defendant's meant, then CLARK agrees although may still disagree as to what exactly is required to support a court finding of dangerousness. At the very least, it would be that the person presents a present credible threat of physical harm to another and require evidence to support that finding.

The motion to dismiss asserted that "[i]t is therefore plain that persons within Sections

922(d)(3) and (g)(3)'s prohibitions are not "law-abiding" citizens within the scope of the Second Amendment right defined in *Heller* and *Bruen*." This seems to be an argument that only "law-abiding" persons are within the scope of the protection of the Second Amendment's text but the Supreme Court has never held that the scope excludes those who are not law-abiding. It is true that the Supreme Court has taken note of law-abiding litigants to emphasize the egregious consequences of some laws but has never held that the same fundamental right does not apply to anyone who has ever failed to be law-abiding. If it were to do so, one would lose their fundamental rights if they ever got convicted of driving 65 in a 55mph zone or put on diversion for shop-lifting a package of bubblegum in their youth. It is true that Heller held that "the Second . . . Amendment[] protect[s] the right of an ordinary law-abiding citizen" to possess handguns" ECF 12 at 26 but, importantly, that holding does not preclude that the Second Amendment *also* protects the right of a non-violent felon and others who may have violated laws during their lifetime. Use of the descriptor law-abiding in cases such as *Heller* was to make a distinction that there was no dispute about whether or not the person exhibited dangerous conduct. *Bruen* holds that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively *protects* that conduct." 142 S. Ct. at 2126 (emphasis added). There is no caveat about "law-abiding". Even the dissent by Justice Stevens in *Heller* recognized that if use of law-abiding were properly read as limiting the scope of those protected by the Second Amendment, that would be inconsistent with how the court treats other fundamental rights and; Justice Thomas has expressed dismay at that prospect.

**V. 18 U.S.C. §922(g)(3) is unconstitutionally vague and is also ambiguous**

The motion to dismiss argued that ' Plaintiff's concession should allay any concerns regarding the vagueness purportedly surrounding the term "user." ' ECF 12 at 28 footnote 14

But CLARK *did not concede* that the term 'user' was not vague and; the term "user" in section 922(g)(3) is vague and; even if not, provides for ambiguity. A complaint need not explicitly assert every legal theory or identify all of the evidentiary facts which will be adduced – for that would make rules of discovery superfluous. Even after discovery and imposition of a pretrial order, not every legal theory or argument in support need be explicitly provided in the order. See *Lurch v. United States,* 719 F.2d 333,339 (10th Cir. 1983)(finding other arguments "are implicitly within the pre-trial order" and noting that "pre-trial orders have been construed to include issues not specifically mentioned in the order"). It has been said that "[p]retrial orders are to be "liberally construed to cover *any of the legal or factual theories* that *might be* embraced by their language. We have cautioned that a pretrial order is a procedural tool to facilitate the trial of a lawsuit on its merits and not to defeat it on a technicality." *Trujillo v. Uniroyal Corp.,* 608 F.2d 815, 818 (10th Cir. 1979) (emphasis added). This is all the more true for a Complaint facing a Motion to Dismiss.

When ambiguity exists in a criminal statute, the interpretation to be used is that which favors the defendant (or, as in this pre-enforcement circumstance, the interpretation that favors the potential defendant). *Bruen* has indicated that even if a law does not implicate any criminal penalties, when multiple reasonable interpretations are possible, "we will favor the one that is more consistent with the Second Amendment's command." CLARK's understanding of the of the term "user" can be seen in his affidavit (ECF 1-1 at ¶¶9 & 20) and that is consistent with becoming a "user" when the substance is actually in "use" by that person.

**VI. Either the Affidavit or the NICS Audit Log is not a reliable source of information**

It is unclear whether the Affidavit (ECF 12-1) attached to the motion to dismiss is intending to

present all results of a review of the NICS Audit Log for "Eric Stefan Clark" or if it only intended to reveal some of the results. See ECF 12-1 at 3, ¶ 11. If it was intended to identify all results, then that review is unreliable because it does not reflect all of the instances for which CLARK was Delayed or Denied. Nor does it identify all of the Denials which were overturned including a "Denied" received on August 21, 2018 (See ECF 1-7) which was later overturned by issuing a "Proceed". Nor does it identify all of the appeals by CLARK which were successful in reversing the "Denied" decisions.  The Affidavit at ¶ 11) b. contains: 'The Audit Log reflected three prior "Denied" transactions for Mr. Clark that do not indicate an appeal was filed. The date of initiation for those transactions is as follows: 10/23/2014, 4/30/2020 and 9/10/2020.' This Audit Log is not reliable if it indicates that no appeal was filed for the 10/23/2014 "Denied" because, in fact, there was an appeal filed and identified in a complaint in a prior lawsuit. See Attachment 1 of this response, at ¶12. The letter dated October 30, 2014 which CLARK sent to the FBI to initiate that appeal can be seen in that same case (See Attachment 2) and the FBI's response letter to that appeal request was dated November 5, 2014 and stated "Your appeal request has been forwarded for further processing.", can be seen in that same case (See Attachment 3).  The assertion that CLARK "failed to follow through with the requisite appeal process" (ECF 12 at 8) should be taken with a grain of salt. And that the Affidavit "advises Plaintiff of the VAF process, so as to avoid any delays." (ECF 12 at 8)" is spurious in that an act of advising has no effect on avoiding any delays. There are certainly valid reasons for not voluntarily seeking to be placed onto a government list such as the VAF. Lastly, ECF 12-1 at ¶11) c. effectively confirms that CLARK will continue to be "Delayed" albeit possibly, at times, for less than 24 hours.

    Respectfully submitted,

Eric S. Clark, 1430 Dane Ave, Williamsburg, Kansas [66095] 785-214-8904

**CERTIFICATE OF SERVICE**

I hereby certify that service was made by

mailing true and correct copies of the foregoing

RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

by deposit in the United States Mail, Postage prepaid,

on August 22, 2023

addressed to:

Terra D. Morehead
500 State Ave., Suite 360
Kansas City, KS 66101

and

Brian E. Vanorsby
1200 Epic Center
301 N. Main
Wichita, Kansas 67202

Eric S. Clark, 1430 Dane Ave, Williamsburg, Kansas [66095] 785-214-8904