IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ERIC S. CLARK,

       Plaintiff,

       v.

MERRICK GARLAND, et al.,

       Defendants.

Case No. 23-2170-JAR-RES

## MEMORANDUM AND ORDER

Plaintiff Eric S. Clark brings this action pro se challenging various provisions of 18 U.S.C. § 922 as violative of the Second Amendment, seeking damages as well as injunctive and declaratory relief against Attorney General Merrick Garland and six unknown government agents.  Before the Court is Defendants' Motion to Dismiss (Doc. 12) under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  The motion is fully briefed, and the Court is prepared to rule.  As described more fully below, the Court grants Defendants' motion to dismiss.

I.      **Legal Background and Factual Allegations**

The following facts are derived from the Complaint and attached exhibits.  The Court is mindful as it considers Plaintiff's submissions that he proceeds pro se, so it reviews his "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."[1]

---

[1] *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).

*Background Checks*

Congress enacted the Brady Handgun Violence Prevention Act of 1993 ("Brady Act") as an amendment to the Gun Control Act of 1968.[2]  It generally requires "a waiting period before the purchase of a handgun, and for the establishment of a national instant criminal background check system to be contacted by firearms dealers before the transfer of any firearm."[3]  As codified at 18 U.S.C. § 922(t), a licensed importer, manufacturer, or dealer is prohibited from transferring a firearm to an unlicensed person unless certain provisions of the statute are met, which include contacting the national instant criminal background check system.

As required by the Brady Act, the Attorney General "establish[ed] a National Instant Criminal Background Check System (NICS) to be contacted by any . . .  licensed dealer of firearms for information as to whether the transfer of a firearm to any person who is not licensed under 18 U.S.C. 923 would be in violation of Federal or state law."[4]  The Attorney General also established "appeals procedures for persons who have been denied the right to obtain a firearm as a result of a NICS background check performed by the Federal Bureau of Investigation (FBI) or a state or local law enforcement agency."[5]

One district court recently summarized the NICS system as follows:

> Under the NICS system, anyone seeking to obtain a firearm from an [Federal Firearms Licensee ("FFL")] first must complete ATF Form 4473, which requires, among other things, attestation that the prospective transferee is not prohibited under federal, State, tribal, or local law from possessing or receiving a firearm.  *See* 18 U.S.C. § 922(s)(1)(A)(i)(I), (s)(3)(B); 27 C.F.R. § 478.124(a).  The FFL then relays to NICS the prospective transferee's name and certain other identifying information.  27 C.F.R. § 478.124(c)(1)–(2); 28

---

[2] Pub. L. No. 103-159, 107 Stat. 1536.

[3] *Id.*

[4] 28 C.F.R. § 25.1.

[5] *Id.*

> C.F.R. §§ 25.6(b), 25.7(a).  An examiner with NICS then conducts a criminal background check using three national databases: (1) the National Crime Identification Center ("NCIC"); (2) the Interstate Identification Index ("III"), which contains criminal history records; and (3) the NICS Index, which contains information on prohibited persons, as defined under either federal or state law. *See* 28 C.F.R. §§ 25.6(c)(1)(iii), (f).  Once these checks are run, if the prospective transferee is twenty-one or older, NICS sends one of three responses to the FFL: (1) proceed; (2) denied; or (3) delayed. *Id.* § 25.6(c)(1)(iv).  If the FFL receives the "delayed" response, the FFL may complete the firearm transfer once either (a) NICS sends a follow-up "proceed" response, or (b) three business days have elapsed since the FFL received the "delayed" response, and NICS has not sent a follow-up "denied" response. *Id.* § 25.6(c)(1)(iv)(B).[6]

In 2003, Plaintiff Eric Clark was convicted of a felony in Kansas and briefly imprisoned. Plaintiff was released on May 4, 2003, and his rights were restored about ten years later, on May 5, 2013.  He has attempted to purchase firearms several times since his rights were restored at various FFLs, but on many of these occasions, his NICS background check was denied or delayed.

The Complaint lists the following dates of denial and delay decisions: February 29, 2016; July 17, 2019; June 15, 2021; January 26, 2023; March 8, 2023; and April 5, 2023.  Plaintiff provides details regarding a few of these dates when he was either denied or delayed.  For example, on June 15, 2021, Plaintiff tried to purchase a firearm at an FFL and filled out ATF Form 4473.  The request was initially denied.  Plaintiff appealed, and on August 27, 2021, the FBI sent Plaintiff a letter explaining that it had reviewed his eligibility and determined that he was in fact eligible to possess or receive a firearm, and enclosed the FBI's Criminal Justice Information Services ("CJIS") Division Firearm-Related Challenge Certificate.  The letter directed Plaintiff to take the certificate to the FFL who initiated the background check to

---

[6] *McRorey v. Garland*, No. 23-CV-00047, 2023 WL 5200670, at *1 (N.D. Tex. Aug. 14, 2023).

complete the transaction.  The letter further explained that if more than thirty days elapsed since the original application, the FFL must recheck the NICS before allowing the transfer.  It also provided him with instructions to apply for a separate procedure to avoid denials and delays in the future—the Voluntary Appeal File ("VAF").  Under this procedure, the letter explains, an individual can request that the NICS retain information that would prevent future extended delays or erroneous denials during the background check process.

Plaintiff tried to purchase the same firearm from the same FFL on September 15, 2021. Since more than thirty days had passed since his original NICS check, the FFL again submitted ATF Form 4473.  This time, the FFL received a "delayed" response.  The FFL refused to sell the firearm to Plaintiff, but indicated that he could purchase the firearm on or after September 21, 2021.  Plaintiff does not allege whether he in fact purchased the firearm.

In January or February 2023, Plaintiff sought to acquire a firearm from an FFL but terminated the purchase when he was informed that a deposit was required before the NICS check, and that if the FFL received a "denied" response, Plaintiff would be required to pay a $50.00 processing fee.  Plaintiff would like to "purchase lawful firearms more frequently but for the near certainty of that exercise being futile because of the enforcement of 18 U.S.C. § 922(t)."[7]

### Prohibition on Receipt of Firearm by Unlawful Drug User

Another provision of § 922 makes it unlawful for a person "who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) . . . to receive any firearm or ammunition which has been shipped or

---

[7] Doc. 1 ¶ 33

4

transported in interstate or foreign commerce."[8]  Plaintiff has residual pain from a fall that

occurred in 2022, and "intends to use marijuana for potential pain relief in the future including in

a State where such use is lawful but is unlawful under Federal law.  [He] would have done so

already but for the potential enforcement of 18 U.S.C. § 922(g)(3)."[9]

### *Prohibition on Obliterated Serial Numbers*

Section 922(k) provides:

> It shall be unlawful for any person knowingly to transport, ship, or
> receive, in interstate or foreign commerce, any firearm which has
> had the importer's or manufacturer's serial number removed,
> obliterated, or altered or to possess or receive any firearm which
> has had the importer's or manufacturer's serial number removed,
> obliterated, or altered and has, at any time, been shipped or
> transported in interstate or foreign commerce.

Plaintiff intends to restore a rusty firearm that he plans to purchase out of state, which will

require him to alter or obliterate the firearm manufacturer's serial number in order to safely use it

for the purpose of self-defense in his home.

Plaintiff generally alleges that 18 U.S.C. § 922 is unconstitutional.  Specifically, he

claims that the background check provisions in § 922(t), the prohibition on possessing a firearm

"which has had the importer's or manufacturer's serial number removed, obliterated, or altered"

in § 922(k), and the prohibition on "an unlawful user of . . . any controlled substance" possessing

a firearm in § 922(g)(3) all violate the Second Amendment on their face and as applied to him.

Plaintiff seeks the following relief: (1) a declaration that the provisions at issue violate the

Second Amendment under the Declaratory Judgment Act; (2) nominal damages, injunctive, and

---

[8] 18 U.S.C. § 922(g)(3).

[9] Doc. 1 ¶ 17.

equitable relief under 42 U.S.C. § 1983; and (3) compensatory, injunctive, and equitable

damages as a "private right of action for injunctive relief and equitable relief" under *Bivens*.

## II.   Subject Matter Jurisdiction

### A.   Standards

Defendants first move to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter

jurisdiction.  Lack of subject matter jurisdiction is a threshold defense that must be addressed

before any merits-based issues.[10]  Federal courts are courts of limited jurisdiction and must

therefore have a statutory or constitutional basis for exercising jurisdiction.[11]  The party seeking

to invoke federal subject matter jurisdiction has the burden to establish that jurisdiction is

proper,[12] and "[m]ere conclusory allegations of jurisdiction are not enough."[13]  The Court

addresses the following grounds for dismissal under Rule 12(b)(1) in turn: (1) sovereign

immunity, and (2) standing.  Because the Court finds it lacks jurisdiction on these grounds, it

need not consider Defendants' additional argument that certain claims under § 922(t) are moot.

### 1.   Sovereign Immunity

Defendants invoke sovereign immunity, and argue that the United States has not

consented to suit for the claims lodged by Plaintiff in this case.  "Sovereign immunity is the

privilege of the sovereign not to be sued without its consent."[14]  "The basic rule of federal

sovereign immunity is that the United States cannot be sued at all without the consent of

---

[10] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

[11] *United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995).

[12] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[13] *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999) (citation omitted).

[14] *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011).

Congress."[15]  "Federal courts generally deem a suit for specific relief, e.g., injunctive or

declaratory relief, against a named officer of the United States to be a suit against the

sovereign."[16]  When sovereign immunity applies, it deprives the court of subject matter

jurisdiction, thereby shielding the government from suit.[17]  Therefore, Plaintiff "may not proceed

unless [he] can establish that the United States has waived its sovereign immunity with respect to

[his] claim."[18]

The Supreme Court in *Ex parte Young* carved out an exception to sovereign immunity

where a plaintiff seeks prospective declaratory and injunctive relief for continuing violations of

federal law by the State.[19]  To determine whether the *Ex parte Young* exception applies, this

Court "need only conduct a straightforward inquiry into whether the complaint alleges an

ongoing violation of federal law and seeks relief properly characterized as prospective."[20]  "*Ex

parte Young* 'may not be used to obtain a declaration that a state officer has violated a plaintiff's

federal rights in the past.'"[21]

Plaintiff wholly fails to address sovereign immunity in his response to the motion to

dismiss.  The Complaint states that jurisdiction is based on 28 U.S.C. § 1331, the general

jurisdictional statute that confers original jurisdiction on federal courts for cases with federal

---

[15] *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983).

[16] *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002) (citing *Larson v. Domestic & Foreign Com. Corp.,* 337 U.S. 682, 687–88 (1949)).

[17] *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006).

[18] *Iowa Tribe of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1232 (10th Cir. 2010).

[19] 209 U.S. 123 (1908); *see Chilcoat v. San Juan County*, 41 F.4th 1196, 1213–14 (10th Cir. 2022) (citations omitted).

[20] *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md*., 535 U.S. 635, 645 (2002)).

[21] *Chilcoat*, 41 F.4th at 1215 (quoting *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019)).

questions.  This statute does not waive the United States' sovereign immunity.[22]  Likewise, the

Declaratory Judgment Act does not waive sovereign immunity, and does not confer jurisdiction

where it otherwise does not exist.[23]

Therefore, sovereign immunity bars Plaintiff's claims for monetary damages and for

retrospective injunctive and declaratory relief against the United States.  Plaintiff's claims for

prospective injunctive and declaratory relief against the federal officials named as Defendants in

this case are covered by the *Ex Parte Young* exception to sovereign immunity.

### 2.    Standing

Article III of the Constitution gives federal courts the power to exercise jurisdiction only

over "Cases" and "Controversies."  As the Supreme Court has explained, "[i]n limiting the

judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the

traditional role of Anglo-American courts, which is to redress or prevent actual or imminently

threatened injury to persons caused by private or official violation of law."[24]  Similarly, the

Declaratory Judgment Act permits, but does not require, the Court to "declare the rights and

other legal relations of any interested party seeking such declaration" where there is "a case of

actual controversy within its jurisdiction."[25]

For a claim to be justiciable under Article III, "it must present a live controversy, ripe for

determination, advanced in a 'clean-cut and concrete form.'"[26]  One of several doctrines

reflecting Article III's case-or-controversy limitation on the judicial power is the doctrine of

---

[22] *Kansas ex rel. Kan. Dep't for Child. & Fams. v. SourceAmerica*, 874 F.3d 1226, 1240 (10th Cir. 2017).

[23] *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002).

[24] *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).

[25] 28 U.S.C. § 2201(a).

[26] *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (quoting *Renne v. Geary*, 501 U.S. 312, 322 (1991)).

standing.  That doctrine requires federal courts, before considering the merits of an action, to

"satisfy themselves that 'the plaintiff has alleged such a personal stake in the outcome of the

controversy" as to warrant [the plaintiff's] invocation of federal-court jurisdiction.'"[27]  Standing

is evaluated based on the facts as they exist at the time the complaint is filed.[28]  At the pleading

stage, the Court "presumes that general allegations embrace those specific facts that are

necessary to support the claim,"[29] and "general factual allegations of injury resulting from the

defendant's conduct may suffice."[30]  Nonetheless, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."[31]

The Supreme Court has found the "irreducible constitutional minimum of standing"

contains three elements.[32]  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision."[33]  To be particularized, an injury "must affect the plaintiff in a

personal and individual way."[34]  To be concrete, the "injury must be '*de facto*'; that is, it must

actually exist."[35] "An allegation of future injury may suffice if the threatened injury is 'certainly

impending,' or there is a 'substantial risk' that the harm will occur."[36]

---

[27] *Summers*, 555 U.S. at 493 (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).

[28] *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).

[29] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, (1957)).

[30] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

[31] *COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1221 (10th Cir. 2016) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[32] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560).

[33] *Id.*

[34] *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).

[35] *Id.* at 340.

[36] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 n.5 (2013)).

### a.      Past Purchases

As discussed above, Plaintiff's claims based on past firearm purchases are barred by the

doctrine of sovereign immunity.  Defendants argue that Plaintiff also lacks standing to challenge

the denials and delays associated with his past firearm purchases under § 922(t) because he has

not shown a concrete and particularized injury.  Plaintiff alleges that he was injured by the series

of denials and delays on his attempted firearm purchases since his rights were restored in 2013.

The Court agrees with Defendants that Plaintiff fails to plausibly allege that FBI officials'

responses to his background checks prevented him from purchasing firearms.  Although Plaintiff

refers to several dates when his NICS checks were denied or delayed,[37] he only provides details

about four attempted purchases—three denials and one delay.  The three denials that he alleges

were all reversed.  In 2016 and 2021, Plaintiff was notified that he was denied, but on appeal the

FBI determined both times that he was eligible for purchase and sent him a certificate to present

to the FFL.  And on August 21, 2018, although Plaintiff claims that his application was initially

delayed and then denied, he alleges that sometime after that date, the NICS system placed him in

a "proceed" status.[38]

In the 2021 letter granting his appeal, which is attached to the Complaint, the FBI also

provided Plaintiff with instructions on applying for the alternate VAF procedure in order to avoid

future denials and delays, including the web address for the application.  Plaintiff does not

acknowledge these instructions in his Complaint or briefing.  Given his allegations that

subsequent attempted firearm purchases were delayed or denied in 2023, the Court draws the

reasonable inference that Plaintiff did not avail himself to the VAF option, which should have

---

[37] *See* Doc. 1 ¶ 29.

[38] *Id.* ¶ 27.

prevented future denials and delays of the kind Plaintiff describes in the Complaint.  Therefore, the Court cannot find that the denials cited in the Complaint constitute concrete injuries because they were reversed upon appeal, and because Plaintiff was provided with a method to avoid future denials and delays.

Plaintiff also alleges injury due to purchases that were delayed by the background check system, but he fails to allege that the delays were followed up with a denial that would prevent him from purchasing a firearm altogether.  And, he fails to identify the injury tied to this delay given that they were followed up with proceed responses.  Moreover, Plaintiff could have prevented these instances of delay by using the FBI's VAF option, which was designed for individuals with past records who are nonetheless eligible to purchase firearms.  Therefore, the Court finds that the delays in Plaintiff's firearm purchases, standing alone, do not constitute concrete injuries.

Thus, to the extent Plaintiff alleges injury based on his past attempted firearm purchases that were denied or delayed, the Court finds that he fails to allege facts to support the injury-in-fact element of standing.

### b.  Future Conduct

Plaintiff also argues that § 922(t) is unconstitutional because the failure of the NICS system to promptly return a correct background check response has chilled him from making firearm purchases in the future.  The Supreme Court has "consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened enforcement, whether today or in the future," and "[i]n the absence of contemporary enforcement, . . . a plaintiff claiming standing must show that the likelihood of future enforcement is 'substantial.'"[39]  In pre-

---

[39] *California v. Texas*, 593 U.S.--, 141 S. Ct. 2104, 2114 (2021) (citations omitted).

enforcement challenges such as those asserted by Plaintiff here, standing and ripeness "boil down to the same question."[40]  In such cases, the Supreme Court has counseled that "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'"[41]

While Plaintiff meets the first part of the injury test with respect to his pre-enforcement challenges—he alleges an intention to engage in courses of conduct arguably affected with a constitutional interest but proscribed by the statute—he fails to allege a credible threat of prosecution.  As for § 922(t), Plaintiff's allegations and the documents attached to his Complaint make clear that every attempt to appeal the denial of his NICS background check was granted, and that the delays usually progressed to a proceed status.  They also indicate that Plaintiff could have availed himself of an alternate VAF procedure that would reduce his risk of getting delays and denials due to his past criminal record, and that he was notified on how to use this procedure. This undercuts, rather than supports, his claim of a credible threat of denial and delay associated with future intended firearm purchases.

As for § 922(g)(3), Plaintiff concedes that he has not yet purchased a controlled substance in a state where it is legal (as his Complaint alleges he intends to do at a future time), and he has not alleged that there was past enforcement of this statutory provision against him.[42] Nor has Plaintiff alleged any other facts to support a credible threat of future enforcement.

---

[40] *Susan B. Anthony List*, 573 U.S. at 157 n.5 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128, n.8 (2007)).

[41] *Id.* at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

[42] *See id.* (explaining that "past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974))).

In order for § 922(k) to apply to Plaintiff, he must first purchase a firearm that requires

him to obliterate the manufacturer's serial number during the restoration process.  According to

the Complaint, he has not yet engaged in this conduct, nor does he allege that he has done so in

the past.  Additionally, Plaintiff fails to allege facts that he is subject to a credible threat of

prosecution if he engages in his intended conduct.[43]  There has been no past enforcement of this

provision against him, nor does he allege any other facts that demonstrate a credible threat of

prosecution.

In sum, the Court finds that Plaintiff fails to allege the injury-in-fact component of

standing as to any of his claims.

### III.     Failure to State a Claim

Assuming, *arguendo*, that Plaintiff has standing, the Court finds that his claims would be

subject to dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

#### A.      Standard

To survive a motion to dismiss brought under Rule 12(b)(6), "the complaint must give

the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

support for *these* claims."[44]  The plausibility standard does not require a showing of probability

that a defendant has acted unlawfully, but it requires more than "a sheer possibility."[45]  "[M]ere

'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not

---

[43] *See, e.g.*, *Vincent v. Garland*, 80 F.4th 1197, 1199 (10th Cir. 2023) (considering challenge by convicted felon prohibited from possessing a firearm under § 922(g)(1)); *United States v. Rahimi*, 61 F.4th 443, 449 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023) (considering this issue on appeal of conviction under § 922(g)(8)); *United States v. Daniels*, 77 F.4th 337, 340 (5th Cir. 2023) (considering challenge to § 922(g)(3) on direct appeal by defendant convicted under the statute).

[44] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

suffice; a plaintiff must offer specific factual allegations to support each claim."[46]  Finally, the

Court must accept the plaintiff's factual allegations as true, view those facts in the light most

favorable to the plaintiff, and assess whether they give rise to a reasonable inference that the

defendant is liable in light of the applicable law.[47]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of

a motion to dismiss, the court "must take all of the factual allegations in the complaint as true,

[but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[48]

Thus, the court must first determine if the allegations are factual and entitled to an assumption of

truth, or merely legal conclusions that are not entitled to an assumption of truth.[49]  Second, the

court must determine whether the factual allegations, when assumed true, "plausibly give rise to

an entitlement to relief."[50]  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."[51]

Plaintiff alleges claims under § 1983, *Bivens*, and the Declaratory Judgment Act.  As

described below, even if Plaintiff has standing, this case must be dismissed because he fails to

allege facts that would support plausible claims under any of these avenues for relief.

---

[46] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[47] *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

[48] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[49] *Id.* at 678−79.

[50] *Id.* at 679.

[51] *Id.* at 678.

### B.      Section 1983 and *Bivens*

Plaintiff names Attorney General Merrick Garland and six "unknown government

agents," who he alleges are all FBI employees, as defendants in this matter.  42 U.S.C. § 1983

provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by

the Constitution" by any person acting under the color of state law.[52]  Because Plaintiff alleges

claims against federal officers only, he cannot state a claim for relief under § 1983.[53]  The

"federal analog to a § 1983 suit" is a *Bivens* suit, "which provides a 'private action for damages

against federal officers' who violate certain constitutional rights."[54]  A *Bivens* claim can only be

asserted against federal officials in their individual capacities; it cannot be asserted against the

United States or federal officials in their official capacities.[55]  Therefore, to the extent Plaintiff

alleges *Bivens* claims against these Defendants in their official capacities, they must be dismissed

as not cognizable.

Plaintiff's individual-capacity claims under *Bivens* are also not cognizable.  The Supreme

Court has only recognized three such implied causes of actions over the past 50 years: (1)

unreasonable search and seizure under the Fourth Amendment,[56] (2) gender discrimination under

---

[52] 42 U.S.C. § 1983.

[53] *See, e g.*, *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1160 (10th Cir. 2021) (quoting *Schaffer v. Salt Lake City Corp*., 814 F.3d 1151, 1155 (10th Cir. 2016)) (explaining that the plaintiff must allege that a Defendant was "acting under color of state law" to state a claim for relief under § 1983).  Although Defendants do not invoke this argument in their motion to dismiss, *sua sponte* dismissal of a pro se claim under Rule 12(b)(6) is permitted "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (quoting *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir.1991)); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001).  The Court finds that the § 1983 deficiency is patently obvious in this case and therefore addresses it despite Defendants failure to do so in the motion.

[54] *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

[55] *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009).

[56] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

the Fifth Amendment against a Congressman by a member of his staff,[57] and (3) cruel and

unusual punishment under the Eighth Amendment by prisoners alleging failure to provide

adequate medical treatment.[58]  In *Ziglar v. Abbasi*, the United States Supreme Court held that

extension of *Bivens* liability beyond these three contexts is a "disfavored" judicial activity.[59]  The

Supreme Court affirmed this principle in *Hernandez v. Mesa* when it declined to recognize a

*Bivens* action for alleged Fourth and Fifth Amendment violations premised on a cross-border

shooting by a Border Patrol Agent at the United States-Mexico border.[60]  Most recently, in

*Egbert v. Boule*, the Supreme Court declined to find a *Bivens* cause of action for First

Amendment retaliation and Fourth Amendment excessive force.[61]  The Tenth Circuit has noted

the following lessons from *Egbert*:

> First and foremost, we are left in no doubt that expanding *Bivens* is
> not just "a disfavored judicial activity," it is an action that is
> impermissible in virtually all circumstances.  The Supreme Court's
> rejection of the plaintiff's Fourth Amendment claim, despite its
> close resemblance to the facts of *Bivens* itself, underscores the
> extent of the Court's disfavor towards *Bivens* claims.  Though the
> failure of that claim raises a question aptly posed by Justice
> Gorsuch—"[w]hen might a court ever be 'better equipped' than the
> people's elected representatives to weigh the 'costs and benefits'
> of creating a cause of action?"—we do not endeavor to answer that
> question here.  Instead, we emphasize what we view as the key
> takeaway from *Egbert*, namely, that courts may dispose of *Bivens*
> claims for "two independent reasons: Congress is better positioned
> to create remedies in the [context considered by the court], and the
> Government already has provided alternative remedies that protect
> plaintiffs."[62]

---

[57] *Davis v. Passman*, 442 U.S. 228, 248–49 (1979).

[58] *Carlson v. Green*, 446 U.S. 14, 19 (1980).

[59] 582 U.S. 120, 135 (2017) (citation omitted).)

[60] 589, U.S.--, 140 S. Ct. 735 (2020).

[61] *Egbert v. Boule*, 596 U.S. 482, 498–99 (2022).

[62] *Silva v. United States*, 45 F.4th 1134, 1140–41 (10th Cir. 2022) (quoting *Egbert*, 596 U.S. at 1803, 1804, 1809).

Expanding *Bivens* to this new Second Amendment context is a disfavored judicial activity that is virtually impermissible under *Egbert*.[63]  The Court finds no authority to support that the courts, as opposed to Congress, are better positioned to create remedies for the Second Amendment violations asserted in Plaintiff's Complaint.  And, the regulations promulgating the Brady Act already provide for an appeals process and an alternative VAF procedure to protect individuals like Plaintiff with a criminal record who have a higher risk of delays and denials during the background check process.  Therefore, to the extent Plaintiff alleges individual-capacity claims against Defendants under *Bivens*, such claims are not cognizable and must be dismissed.

## C.    Declaratory Judgment Act

Plaintiff's claims under the Declaratory Judgment Act ask the Court to deem unconstitutional the provisions at issue in § 922, on their face and as applied to Plaintiff.  First, the Court notes that "[a] declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act."[64]  Therefore, declaratory relief is improper to the extent Plaintiff seeks a declaration about Defendants' past conduct in running background checks when he attempted to purchase firearms.  Moreover, declaratory relief  "presupposes the existence of a judicially remediable right."[65]  Because Plaintiff fails to offer a cognizable substantive claim for relief under either § 1983 or *Bivens*, his request for declaratory relief is unavailable.

---

[63] *See id.*; *see also Cronk v. FBI*, No. 22 CV 51, 2023 WL 6064925, at *2 (N.D. Ind. Sept. 18, 2023) ("Indeed, only a handful of courts have even addressed the question, with all of them declining to extend *Bivens* into the Second Amendment context.").

[64] *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008) (citation omitted).

[65] *Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670, 671 (10th Cir. 2016) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)).

#### D.        Leave to Amend

While the Court recognizes the general rule that pro se parties generally should be allowed leave to amend, it may appropriately dismiss a claim without prejudice "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[66]  "[T]he district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim."[67]  Here, Plaintiff does not move to amend, nor does he suggest changes that would cure the errors identified in this opinion.  The Court determines for the many reasons explained throughout this opinion that Plaintiff cannot prevail on any of the facts alleged in the Complaint, and finds that it would be futile to allow him leave to amend.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 12) is **granted**.  This case is dismissed in its entirety without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated: January 16, 2024                 S/ Julie A. Robinson

                                         JULIE A. ROBINSON
                                         UNITED STATES DISTRICT JUDGE

---

[66] *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010)) (alteration omitted).

[67] *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001).