**FILED**
U.S. District Court
District of Kansas

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**JAN 19 2024**

Clerk, U.S. District Court
By_____ Deputy Clerk

ERIC S. CLARK,                              )
Plaintiff,                                  )
              v.                            )        Case No. 23-2170-JAR-RES
MERRICK GARLAND, *et. al.*                  )
Defendants.                                 )

**MOTION TO SET ASIDE JUDGMENT**

**AND; ALTERNATIVELY,**

**TO SEEK LEAVE TO AMEND THE COMPLAINT**

Plaintiff moves pursuant to Rule 60  (Relief from a Judgment or Order) on grounds provided for

in 60(b) . . . (1) (mistake, inadvertence), (2) (newly discovered evidence) and (6) (any other

reason justifying relief from the operation of the judgment), that the court set aside the Order of

Dismissal (ECF 22) and; alternatively, identify the specific deficiencies of the Complaint that

warrant dismissal and grant leave to amend the Complaint to allow Plaintiff to cure deficiencies.

**SUMMARY OF THE ISSUES**

The district court committed reversible errors as follows. The order of dismissal (ECF 22) was

in error **1)** SOVEREIGN IMMUNITY, insofar as that was applied to the defendants who

were sued in their personal capacity and; **2)** STANDING analysis did not properly address

*time delay* in exercising the right to purchase a firearm as opposed to being completely

*prevented* from purchasing a firearm. That is, the implied conclusion of law that past time delay

in purchasing a firearm(regardless of  being permanently prevented from eventual purchase), or

imminent threat of similar future time delay in purchasing, cannot serve as the basis of actual

past injury and imminent future injury, respectively. Alternatively, if the court did consider that

allegations of time delay, alone, can provide standing, then the district court erred in that it

impliedly made a merits decision as to what length of time in delaying exercise of the right is

1

permitted by the Second Amendment.  Reaching the merits on a motion to dismiss without converting the motion to dismiss to one for summary judgment is error and the motion to dismiss was not converted to a motion for summary judgment. And the standing analysis considered the Voluntary Appeal File (VAF) in regard to credible threat of enforcement. (There is also new evidence to support credible threat related to 60(b)(2) in that after dismissal was ordered, Plaintiff was again delayed by 922(t) in seeking to exercise his Second Amendment right.) The order is also in error by finding **3)** FAILURE TO STATE A CLAIM and **4)** for not allowing the "facial" DECLARATORY JUDGMENT ACT declarations of legal rights sought and  **5)** by not allowing LEAVE TO AMEND to cure any deficiency(ies) the court finds as reason(s) to dismiss and the order was not clear about what deficiency(ies) were the reason for dismissal and the court raise an issue used as grounds for dismissal sua sponte without opportunity for the parties to address it before ordering dismissal.

## STATEMENT OF THE ISSUES

1) The order was in error insofar that it applied sovereign immunity to the defendants who were sued in their personal capacity.

2)  The order erred in finding lack of standing and appears to have misapprehended the claim as to violation of the right to keep and bear arms and; alternatively, error in reaching the merits without converting the motion to one for summary judgment and considered the Voluntary Appeal File (VAF) in regard to credible threat of enforcement.

3) The order is in error by finding failure to state a claim.

4) The order is in error for not allowing the "facial" declarations sought

5) The order is in error by not allowing leave to amend.

2

**ARGUMENT**

1) **The order was in error insofar that it applied sovereign immunity to the defendants who were sued in their personal capacity.**

The order stated that "defendants invoke sovereign immunity, and argue that the United States has not consented to suit for the claims lodged by Plaintiff in this case." (ECF 22 at 6) and stated that "Plaintiff wholly fails to address sovereign immunity in his response to the motion to dismiss." (ECF 22 at 7)

Plaintiff did not perceive that "defendants invoke sovereign immunity" for those defendants who were sued in their personal capacity and Plaintiff saw no argument in the motion to dismiss that those defendants would have sovereign immunity. See ECF1 at 1, "Merrick Garland in personal capacity, Unknown government agent # 1 (UGA# 1) in personal capacity, Unknown government agent #2 (UGA#2) in personal capacity, Unknown government agent #3 (UGA#3)in personal capacity, Unknown government agent #4 (UGA#4) in personal capacity, Unknown government agent #5 (UGA#5) in personal capacity, Unknown government agent #6 (UGA#6) in personal capacity, Defendants". Also the style heading of the motion to dismiss contained "MERRICK GARLAND, in his official **and personal capacity**" (ECF 12 at 1) (emphasis added). Further, the mention in the factual background section of the motion to dismiss that "[t]he Plaintiff's **prior litigation** resulted in a dismissal because the Court lacked jurisdiction because defendant had sovereign immunity" (ECF 12 at 7) (emphasis added) does not speak to the **present litigation**. The court acknowledged that "Plaintiff's claims for **prospective injunctive and declaratory relief** against the federal officials named as Defendants in this case are covered by the *Ex Parte Young* exception to sovereign immunity." (ECF 22 at 9)(emphasis added) and the court should acknowledge that the same is true for defendants named in their personal capacity.

**2) The order erred in finding lack of standing and appears to have misapprehended the claim as to violation of the right to keep and bear arms and; alternatively, error in reaching the merits without converting the motion to one for summary judgment and considered the Voluntary Appeal File (VAF) in regard to credible threat of enforcement.**

To begin, the court properly stated that part of the legal analysis for a motion to dismiss is that the Court "presumes that general allegations embrace those specific facts that are necessary to support the claim," (ECF 22 at 9) and that "general factual allegations of injury resulting from the defendant's conduct may suffice."(ECF 22 at 9)

In contravention of the standards above, the order states that Plaintiff "fails to identify the injury tied to this delay given that they were followed up with proceed responses." (ECF 22 at 11) This is incorrect, but the order evidences a misapprehension that the term(or terms) delay/delays/delayed has two very different meanings depending on context and the correct meanings appear not to have been discerned in various places where the term was used. Had Plaintiff anticipated this confusion, he would have perhaps assigned a substitute term to aid comprehension. So, two meanings, there are delays as in time passage and there are "delays" that represent literal responses to a background check inquiry. With this clarification, Plaintiff would note that the Complaint contains:

> "CLARK intends to purchase, transfer, and possess and use firearms and ammunition ( i.e., keep and bear arms) which have traveled in interstate commence in the future including a handgun and appropriate associated ammunition for the purpose of self defense in his home and his right to do so which is protected by the Second Amendment of the Federal Constitution is likely to be infringed by delays in purchasing firearms from an FFL"

This "delays in purchasing" is not "delays from a background check inquiry". It is speaking of action time delay, time passing with the clock of time while not being able to exercise the right to keep and bear arms. Similarly, Plaintiff's response to the motion to dismiss contains

4

"The factual allegations concerning retrospective harm of past delays is fairly traceable to section 922(t) is not factually disputed, rather it is disputed as to the length and permissibility of various delays in relation to the Second Amendment right to keep and bear arms."

These reference to delays are also references to time passage as evidenced by use of "length".

The order of dismissal acknowledged that, at the pleading stage, the Court "presumes that general allegations embrace those specific facts that are necessary to support the claim," (ECF 22 at 9) and that "general factual allegations of injury resulting from the defendant's conduct may suffice."(ECF 22 at 9)

As to standing for past purchase attempts the order appears to conflate the Plaintiff's claim to infringement as being limited to being *prevented* from purchasing a firearm. That is an incorrect understanding of the claim as *delay (mere time)* in acquiring a firearm is claimed to be an infringement of the right. At end, the order stated that "[t]he Court agrees with Defendants that Plaintiff fails to plausibly allege that FBI officials' responses to his background checks **prevented** him from purchasing firearms." ECF 22 at 10. (emphasis added) Being *prevented* from purchase of a firearm need not be alleged to have standing based on (time) *delay* in purchasing/acquiring a firearm. A time delay in seeking to purchase a firearm is sufficient to injure one's ability to exercise the right to keep and bear arms. And, if that time delay is at a critical time, it could also cause deadly results. That is, "the law's waiting period could well be the critical time in which the applicant expects to face danger. So the temporary deprivation that Plaintiffs allege is a facially plausible Second Amendment violation." *Maryland Shall Issue, Inc. v. Wes Moore*, published opinion in appeal No. 21-2017 issued 11/21/2023. Note: motion for rehearing en banc in Fourth Circuit Appeal No.21-2017 was granted 1/11/2024 and the case tentatively calendared for oral argument during the March 19-22, 2024.

Wherefore, even if it is accepted as true that Plaintiff was not permanently *prevented* from purchasing any firearms, the court did not properly address the plausibility that the allegations of time delays in exercising the right to purchase firearms, alone, can provide concrete injury for standing. If the court is holding that mere time delay alone in purchasing firearms can never be a valid basis to show standing for a violation of the right to keep and bear arms, that holding would be a plain error of law. Constitutional violations are routinely recognized as triggering irreparable harm unless they are promptly remedied. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) (loss of constitutional "freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). As held in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), "it is clear that the Framers and ratifiers of the Fourteenth Amendment counted **the right to keep and bear arms among those fundamental rights** necessary to our system of ordered liberty." (emphasis added) This well established concept that loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury can be seen in the Complaint under the section titled as DE MINIMUS VIOLATION OF A FUNDAMENTAL RIGHT. See ECF 1 at 80-84. How long can the First Amendment right of free speech in a traditional public forum be delayed by the government before it becomes an abridgment of the right? How long can the Second Amendment right to keep and bear arms in a traditional open public place be delayed by the government before it becomes an infringement of the right? For the Fourth Amendment right against unreasonable seizures, how long can a seizure of a person walking on a public sidewalk last if the seizure was made without a warrant (Stop right there!) if an officer has no more than a hunch about criminal activity? Delays for periods of time above "zero time" is the central basis of Plaintiff's claim concerning 922(t). Does the court know without going to the merit analysis? As to how much

delay is permissible under the Second Amendment in relation to 922(t) is another question ,

but that is a question which goes to the merits evaluation and would rest on developed facts.

That merits question is irrelevant for stating a claim and even irrelevant to a standing analysis

aside from the existence of some time delay longer than "none".

The order mentions "delays of the kind Plaintiff describes in the Complaint."(ECF 22 at

10-11)  First "delays of the kind Plaintiff describes in the Complaint." must include that

 "CLARK has previously been denied several times and delayed numerous times from being able

to purchase and transfer firearms at various FFLs, including other *delays of over 180 days*". ECF

1 an 16 ¶29 (emphasis added) In retrospect, Plaintiff can see how the multiple meanings of

"delay" could be confusing because in this paragraph's use of "denied several times " and

"delayed numerous times" both refer to the responses received from back ground check inquires

while the reference in that paragraph to "delays of over 180 days" refers to a specific length of

time, that is, it refers to the passage of time like a clock shows. And 180 days is well past zero

seconds of time delay. That is even if eventually determined *on the merits* to be "minimal", that

still can fall within a range that violates the constitutional right for standing purposes.

If the court acknowledges that time delay in exercise of a fundamental right, alone, as

shown by long establish law, can constitute an infringement of a the fundamental right, then the

complaint alleges facts sufficient to plausibly allege an injury, both actual past injury and future

imminent injury.  The order acknowledged that "An allegation of future injury may suffice if the

threatened injury is  'certainly impending,' or there is a 'substantial risk' that the harm will

occur." Plaintiff's response to motion to dismiss provided that  "ECF 12-1 at ¶11) c. effectively

confirms that CLARK will continue to be "Delayed" albeit possibly, at times, for less than 24

hours." (ECF 13 at 15) Even without referring to that affidavit filed with defendants' motion to

dismiss, the factual allegations in the Complaint of past injuries by delays provide strong

evidence of imminent threat of future injury by delay(time). The order acknowledged that

"Plaintiff refers to several dates when his NICS checks were denied or delayed" (ECF 22 at 10)

and that Plaintiff "provides details about four attempted purchases— three denials and one

delay." (ECF 22 at 10)  The order fails to acknowledge the those constitute contemporary

enforcements of 922(t) and serve to strongly evidence future similar harm. The order properly

acknowledged that "[i]n the absence of contemporary enforcement, . . . a plaintiff claiming

standing must show that the likelihood of future enforcement is 'substantial.'" (ECF 22 at 11)

The factual allegations of the Complaint provided that there are multiple successive

contemporary enforcements. Based on the court's order of dismissal holding there to be no

credible ongoing threat of enforcement of 922(t) to cause any more delay for Plaintiff,

Plaintiff accepted that on face value and visited an FFL on January 17, 2024 and attempted to

Purchase a firearm. Plaintiff now has additional facts from January 17, 2024 that he could insert

into the Complaint if provided leave of Court to do so. Those factual allegations would be the

following:

a) "On January 17, 2024, CLARK sought to purchase a firearm and was that purchase
was time delayed for well over an hour because of the NICS background check as
implemented in federal law at 18 U.S.C. §922 (t)(1)(A&B) and; on the Form 4473
used in connection with that attempted purchase, under the heading of "The response
initially provided by NICS or the appropriate State agency was:", the FFL checked
the checkbox labeled "Delayed" after receiving an acknowledgement from the NICS
system. The FFL then refused to sell any firearm to CLARK because of that
information and the FFL also, by the FFL writing "1-23-24" on the same Form 4473,
indicated that CLARK could purchase the firearm on or after "1-23-24"
(approximately four and a half days later). For some time period after the FFL
notified Plaintiff that the FFL would not sell Plaintiff a firearm, Plaintiff was unable
to exercise his right to keep and bear arms for self defense for at least an hour. The

travel time involved in attempting to make this purchase of a firearm consumed about 2 hours of time just for the round trip from Plaintiff's home to the FFL and back."

b) "On 1/17/2024, Defendant UGA#7 used the NICS system to provide "delayed" status information for the NICS background check being requested by the FFL in order to determine if the FFL was permitted by law to allow CLARK to purchase a firearm."

At end, the main thing is that, likely because of the "multiple meaning" issue identified herein concerning uses of the term "delay",  the order did not acknowledge that, regardless of not being permanently prevented from purchasing a firearm, the *time delay* caused by those detailed attempted purchases provide for plausible claim of actual injury, in fact, multiple successive actual injuries, which strongly evidences imminent future injury of a similar kind, that is, through causing Plaintiff's inability to exercise his right to keep and bear arms for some period of time. A paragraph in the order contains:

"Plaintiff also alleges injury due to purchases that were delayed by the background check system, but he fails to allege that the delays were followed up with a denial that would prevent him from purchasing a firearm altogether. And, he fails to identify the injury tied to this delay given that they were followed up with proceed responses. Moreover, Plaintiff could have prevented these instances of delay by using the FBI's VAF option, which was designed for individuals with past records who are nonetheless eligible to purchase firearms. Therefore, the Court finds that the delays in Plaintiff's firearm purchases, standing alone, do not constitute concrete injuries." (ECF 22 at 11)

This seems to confirm that the court was basing the injury for standing analysis for 922(t) as being the literal NICS responses ("delayed" or "denied") to a background check inquiry rather than the injury being causing Plaintiff is unable to exercise the right to keep and bear arms **for some period of time**. If the court is relying on the time delays being of a type that would not survive a Second Amendment analysis, then the court is addressing the merits without converting the motion to one for Summary Judgment, which would be error.

### Voluntary Appeal File (VAF)

The order stated that Plaintiff's factual allegations . . .

> "indicate that Plaintiff could have availed himself of an alternate VAF procedure that would reduce his risk of getting delays and denials due to his past criminal record, and that he was notified on how to use this procedure. This undercuts, rather than supports, his claim of a credible threat of denial and delay associated with future intended firearm purchases." (ECF 22 at 12)

That logic is opposite of what a reasonable person would infer *unless* one makes the leap to assume that Plaintiff would voluntarily give up exercise of his First Amendment right of freedom of association in order to help prevent infringements of his Second Amendment right. If, in fact, and there is no credible evidence suggesting otherwise, it should be assumed (reasonable inference) that Plaintiff chooses to continue to exercise his right of freedom of association to not associate himself by not availing himself of "an alternate VAF procedure". If "alternate" implies not mandated by law, that is, optional procedure, then, indeed, that readily supports, rather than undercuts, "his claim of a credible threat of denial and delay associated with future intended firearm purchases." There was a statement made in Plaintiff's response to the motion to dismiss that, if anything, evidences that Plaintiff has valid reasons for not availing "himself of an alternate VAF procedure". See "There are certainly valid reasons for not voluntarily seeking to be placed onto a government list such as the VAF." (ECF 13 at 15) The order stated that

> "[i]n the 2021 letter granting his appeal, which is attached to the Complaint, the FBI also provided Plaintiff with instructions on applying for the **alternate** VAF procedure in order to avoid future denials and delays, including the web address for the application. **Plaintiff does not acknowledge these instructions in his Complaint or briefing.**"
> (ECF 22 at 10)(emphasis added)

Certainly, whatever is in Plaintiff's "briefing" is immaterial to a motion to dismiss which looks only to the four corners of the complaint. And, surely the complaint cannot possibly be expected

to address a letter's content that was attached to a motion to dismiss after the complaint was filed. Such might be relevant if the court were to convert the motion to dismiss to a motion for summary judgment, but such conversion was plainly not done. Further, it is unclear how that "alrernate" procedure is relevant to standing because the 2021 letter instructions were not lawful commands that CLARK was required to follow. Further, the Affidavit submitted by defendants made indirect reference to the same instructions by stating that "opportunity to submit a Voluntary Appeal File (VAF) application" (ECF 12-1 at 3, ¶12) and Plaintiff's response addressed that by stating

> "that the Affidavit "advises Plaintiff of the VAF process, so as to avoid any delays." (ECF 12 at 8)" is spurious in that an act of advising has no effect on avoiding any delays. There are certainly valid reasons for not voluntarily seeking to be placed onto a government list such as the VAF." (ECF 13 at 15)

It is also unclear how not acknowledging a voluntary option is relevant to the alleged facts in the complaint used to support Plaintiff's standing based retrospective past time delays and probability of future time delay in Plaintiff's exercise of a right. (See response elsewhere concerning leave to amend).

Relatedly, the order did not address the response by Plaintiff (See ECF 13 at 15) that 'ECF 12-1 at ¶11) c. effectively confirms that CLARK will continue to be "Delayed" albeit possibly, at times, for less than 24 hours.' Perhaps the court concluded that such delays would be Plaintiff's own fault for not voluntarily giving up his right of freedom of association. The order stated that "[g]iven his allegations that subsequent attempted firearm purchases were delayed or denied in 2023, the Court draws the reasonable inference that Plaintiff did not avail himself to the VAF option" (ECF 22 at 10) Plaintiff agrees that is a reasonable inference but would disagree that it is relevant to a standing analysis unless (as is reasonably inferred from the

court's order) either that Plaintiff has no First Amendment protection for freedom of association (which also protects freedom not to associate) - or - the court is now holding that Plaintiff is required by this court to give up that First Amendment right in order to not have his Second Amendment right infringed by delay in exercising the right. Also relatedly, the order appears to determine, without evidence from which to draw a reasonable inference, that Plaintiff availing himself of "the VAF option," (ECF 22 at 10) "should have prevented future denials and delays of the kind Plaintiff describes in the Complaint."(ECF 22 at 10-11)  As pointed to in Plaintiff's response to the motion to dismiss, "an act of advising has no effect on avoiding any delays. There are certainly valid reasons for not voluntarily seeking to be placed onto a government list such as the VAF" (ECF 13 at 15) The VAF option is irrelevant and there is no requirement in law to place oneself on a government VAF list.

The order stated that "the Court cannot find that the denials cited in the Complaint constitute concrete injuries because they were reversed upon appeal, and because Plaintiff was provided with a method to avoid future denials and delays." (ECF 22 at 11) Here, the court addresses "denials" without addressing the literal delay caused by the "denials",  specifically delaying exercise of Plaintiff's right to keep and bear arms that is caused by "denials". That a "denial" is reversed after an appeal is made to the FBI does not mean there was no time delay caused to Plaintiff's ability to exercise his right. As to the "because Plaintiff was provided with a method to avoid future denials and delays", that reason cannot stand as a valid basis for the court's reasoning concerning injury without impliedly affirming that either Plaintiff has no First Amendment protection for freedom of association (which also protects freedom not to associate) or Plaintiff is required to give up that First Amendment right.

As to standing for 922(g)(3), the order stated that Plaintiff "has not alleged that there was

past enforcement of this statutory provision against him.  Nor has Plaintiff alleged any other facts

to support a credible threat of future enforcement. (ECF 22 at 12)(footnote omitted) A person

does not have to risk criminal prosecution to show a threat of enforcement, thus a person need

not show a specific enforcement against himself or herself. Plaintiff did include the fact of a

criminal case involving a prosecution of "§ 922(g)(3)" See ECF 1 at 90, 'On April 6, 2023, the

United States District Court for the Western District of Texas, in *United States v. Connelly*, Case

No. 3:22-cr-00229-KC, issued an Order(Dkt. 101) stating that "§ 922(d)(3) does not withstand

Second Amendment scrutiny for much the same reasons that § 922(g)(3) does not." '

Plaintiff could include many more facts of numerous other prosecutions of the same. Perhaps

Plaintiff took it for granted that such prosecutions were common knowledge. The order of

dismissal even cited to such a case. See ECF 22 at 13, footnote 43, "*United States v. Daniels*,

77 F.4th 337, 340 (5th Cir. 2023) (considering challenge to § 922(g)(3) on direct appeal by

defendant convicted under the statute)."

While the challenges to subsections 922(g)(3) and 922(k) are effectively types of pre-

enforcement challenges, CLARK is faced with imminent injury. The very purpose of pre-

enforcement challenges in numerous contexts is to prevent citizens from having to absorb the

serious risks of violating a law in order to challenge it. Cf. *Steffel* v. *Thompson*, 415 U.S. 452,

459 (1974) ("it is not necessary that petitioner first expose himself to actual arrest or prosecution

to be entitled to challenge a statute that he claims deters the exercise of his constitutional

rights."). See also *North Carolina* v. *Pearce*, 395 U.S. 711, 724 (1969) (regarding Due Process:

"'penalizing those who choose to exercise' constitutional rights, 'would be patently

unconstitutional.' * * * And the very threat inherent in the existence of such a punitive policy

would, with respect to those still in prison, serve to 'chill the exercise of basic constitutional

rights.'"), overruled in part by *Alabama* v. *Smith*, 490 U.S. 794 (1989).

In *Teter et al. v. Lopez et al.*, No. 20-15948, (9th Cir. Aug. 7, 2023), the Ninth Circuit held that "[p]laintiffs have established standing to challenge" where "[p]laintiffs are completely unable to acquire the arms that they allege are protected by the Second Amendment, which places this case within the confines of *Jackson (referring to Jackson v. City & County of San Francisco*, 746 F.3d 953 (9th Cir. 2014)).

CLARK alleges that subsection 922(g)(3) prohibits the possession of arms protected by the Second Amendment (albeit for some unspecified duration) and subsection 922(k) is argued to permanently prohibits the possession of arms protected by the Second Amendment.

In many cases addressing laws that chill the exercise of constitutional rights, the protected activity in question is not necessarily forbidden outright but instead saddled with burdens and risks that cause citizens to steer clear of the line and to forego activity that would properly be protected. With 922(k), the protected activity (keeping/possession) is forbidden outright. Even if one firmly believes they could be successful in reversing a unconstitutional conviction that resulted in years of imprisonment, the prospect of facing the process that would be needed to reach that point can be a heavy deterrent to exercise of that fundamental right. See also *United States* v. *Jackson*, 390 U.S. 570, 581–82 (1968) (regarding Fifth Amendment Rights: "If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional.") *Shapiro* v. *Thompson*, 394 U.S. 618, 631 (1969) (regarding the right to travel: "the purpose of deterring the immigration of indigents * * * is constitutionally impermissible."), overruled in part on other grounds by *Edelman* v. *Jordan*, 415 U.S. 651 (1974).

14

**3)   The order is in error by finding failure to state a claim.**

The order was correct about the various standards of . . .

> To survive a motion to dismiss brought under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."44 The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but it requires more than "a sheer possibility." (ECF 22 at 13)

and

> the Court must accept the plaintiff's factual allegations as true, view those facts in the light most favorable to the plaintiff, (ECF 22 at 14)

The order stated that "Plaintiff alleges claims under § 1983, *Bivens*, and the Declaratory Judgment Act. As described below, even if Plaintiff has standing, this case must be dismissed because he fails to allege facts that would support plausible claims under any of these avenues for relief." (ECF 22 at 14)

Plaintiff concedes that § 1983 is not an available avenue for relief in this case, but does not concede the other two avenues, Bivens and the Declaratory [Relief] Judgment Act.

### *Bivens*

The existence of a remedy for the violation in *Bivens* was implied by the importance of the right violated. Plaintiff asserts that that importance exists for all of the self-executing enumerated "individual" fundamental rights set forth in the Bill of Rights. The Second Amendment is not a second class right.

In 1988, Congress virtually immunized federal government officials from state common law tort liability, substituting the government as a defendant under the FTCA for these claims. See Westfall Act, Pub. L. No. 100-694, § 6, 102 Stat. 4563, 4564–65 (1988) (codified at 28

U.S.C. § 2679(b)(2)(B) (2006)). At the same time, Congress fashioned an exception to the statutory grant of official immunity, while not explicitly codifying the tag name of *Bivens*, nonetheless expressly preserved the right of individuals to pursue actions for "a violation of the Constitution of the United States." Id. § 5, 102 Stat. at 4564 (codified at 28 U.S.C. § 2679(b)(2)(A) (2006)). In 1973, Congress was concerned about a series of federal no-knock drug enforcement raids on private homes. Although it recognized that the victims could pursue a *Bivens* action, Congress was concerned that such actions against government officials might not adequately compensate injured victims and deter government wrongdoing. Accordingly, Congress added the federal government as a defendant by making suits available under the FTCA for a series of law-enforcement torts. These new remedies under the FTCA were designed to supplement, not displace, the *Bivens* action. See S. REP. NO. 93-588, at 3 (1973), reprinted in 1974 U.S.C.C.A.N. 2789, 2791 ("[T]his provision should be viewed as a counterpart to the Bivens case and its progeny [sic], in that it waives the defense of sovereign immunity so as to make the Government independently liable in damages for the same type of conduct that is alleged to have occurred in Bivens (and for which that case imposes liability upon the individual government officials involved).").

In *Bivens*, monetary damages was determined to be an appropriate remedy but *Bivens* does not stand for the proposition that assessing damages or providing a monetary remedy is always an appropriate remedy for constitutional rights. *Bivens* laid down a rule that a private right of action will be inferred for *an appropriate remedy* where no other federal remedy is provided for the vindication of a constitutional right, based on the principle that "for every wrong, there is a remedy".

16

The entire thrust of *Bivens* is to provide *an appropriate form of remedy* for violation of a private right. It may well be that monetary damages are not an appropriate form of remedy for the Second Amendment right but that does not mean all forms of remedy would be inappropriate. Plaintiff is not going to argue that monetary relief must always be available under private right of action for self executing enumerated rights provisions (*Bivens*-type, i.e., implied cause of action) except for any self-executing enumerated right in the Constitution that directs the availability of compensation (such as the Takings clause) but "declaration of rights" and "prospective injunctive relief" concerning that "declaration of rights" should be available for all such self-executing enumerated "rights of the people".

> **Side note:** On Sep 29 2023 (which was after the instant case was filed), the United States Supreme Court heard oral argument closely related to this topic in *DeVillier v. Texas*, docket No. 22-913 for which oral argument was held on January 16. 2024. The Question Presented was: May a person whose property is taken without compensation seek redress under the self-executing Takings Clause even if the legislature has not **affirmatively provided them with a cause of action**? (emphasis added)

See also the section of Plaintiff's complaint titled ANTI-POWER OF THE BILL OF RIGHTS (ECF 1 at 29-36)

### *Bivens – Congress better positioned*

The order stated that "[t]he Court finds no authority to support that the courts, as opposed to Congress, are better positioned to create remedies for the Second Amendment violations asserted in Plaintiff's Complaint." ( ECF 22 at 17) The court may have meant "causes of action" rather than "remedies" or may have meant remedy in a broad sense. Regardless, whilst that view is admirable, as it is keeping with the philosophy of judicial restraint, it is not satisfactory in that the courts are authorized by the constitution to hear cases and controversies and it is the constitution that provides authority to the courts to find causes of action exist for those

provisions of the Bill of Rights which are self-executing provisions. The Bill of Rights was adopted after the originally enacted provisions, including the provision of judicial power. By amendment of the Constitution to include a self-executing provision of protection that even Congress cannot override necessarily implies a right to remedy for violation of the provision. Can the Congress enact an Authoritative statute eliminating protection of the exercise of free speech by the people? (The same people as that word applies to in the text of the First Amendment and the Second Amendment – the entire political community)

Plaintiff's Complaint at page 5 offered that a private right of action is inherent in the federal constitution for the protection of the beneficiaries of the that constitution. See, e.g., *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) noting that "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to **adjust their remedies** so as to grant the necessary relief." See *Bell v. Hood*, 327 U.S. 678, 684 (1946)(emphasis added).

> "'Disposition of private rights to life, liberty, and property" was understood to "fal[l] within the *core of the judicial power*, whereas disposition of public rights [was] not." Wellness Int'l Network, Ltd. v. Sharif, 575 U. S. 665, 711 (2015) (THOMAS, J., dissenting).' *Axon Enterprise v. Federal Trade Commission, et al.*, 598 U. S. ____ (2023) (Thomas J., concurring) (emphasis added)

> "[W]hen private rights are at stake, full Article III adjudication is likely required. Private rights encompass "the three 'absolute' rights," life, liberty, and property, "so called because they 'appertain and belong to particular men merely as individuals,' not 'to them as members of society or standing in various relations to each other'—that is, not dependent upon the will of the government." *Wellness Int'l Network*, 575 U. S., at 713–714 (dissenting opinion) (quoting 1 W. Blackstone, Commentaries on the Laws of England 119 (1765); alterations omitted)." *Ibid.*

*Marbury* "'stand[s] for the importance of private right." *Harrison*, 86 Geo. L. J., at 2516, n. 10.' *Id.* at footnote 2.  And, of course, *Marbury* famously stands for the power of the

judiciary being supreme when it comes to saying what the law is.

The order quotes from *Silva v. United States*, 45 F.4th 1134, 1140–41 (10th Cir. 2022)

which quotes from *Egbert v. Boule*, 596 U.S. 482, 1803,1804,1809 (2022):

> "a question aptly posed by Justice Gorsuch—"[w]hen might a court ever be
> 'better equipped' than the people's elected representatives to weigh the 'costs and
> benefits' of creating a cause of action?"—we do not endeavor to answer that
> question here. Instead, we emphasize what we view as the key takeaway from
> *Egbert*, namely, that courts may dispose of *Bivens* claims for "two independent
> reasons: Congress is better positioned to create remedies in the [context
> considered by the court], and the Government already has provided alternative
> remedies that protect plaintiffs."

The question posed by Justice Gorsuch of "[w]hen might a court ever be 'better equipped' than

the people's elected representatives to weigh the 'costs and benefits' of creating a cause of

action?" was not answered but Plaintiff has an answer -- when a right of the people enumerated

in the constitution unequivocally declares that that right "shall not be infringed".

Plaintiff also has another pertinent question: What does Congress know of text, history and

tradition in relation to the right to keep and bear arms? Has not Congress enact statutes that

have plainly infringe upon the right to keep and bear arms?

A *Bivens*, or private right authority to seek only declaratory and injunctive relief would

not be a heavy weight on the government in the context of the Second Amendment,  after all,

it is not the job of Congress to "say what the law is" as that law was enact by the People, not

Congress. Declaratory relief cannot be performed by Congress for Congress itself lacks the

power to say what the law is, and injunctive relief would only engage the government to prevent

it from doing what it is not lawful for Congress to doing the first place, so what is left as a cost to

Congress if monetary damages are not available? As for the cost to The People when there is

no private right authority can be substantial irreparable harm to a fundamental right.

Hearkening back to the sentiment of Justice Gorsuch – If Congress is willing to infringe upon a fundamental right of the People, what on Earth makes them better positioned to weigh the 'costs and benefits' ? that is, what makes them even think a weighing needs to take place when the People have already performed that weighing themselves? As was observer in *Heller*, the Second Amendment takes some policy choices off the table. And that is because We The People set the policy in that Amendment itself.

### *Bivens – alternative remedy*

The order stated that the court finds:

> "the regulations promulgating the Brady Act already provide for an appeals process and an alternative VAF procedure to protect individuals like Plaintiff with a criminal record who have a higher risk of delays and denials during the background check process." (ECF 22 at 17)

So, an appeal to the FBI of the Executive branch and an alternate choice to relinquish one fundamental right in exchange for some possible (but no guarantee) protection of another fundamental right. First, an appeals process to the FBI is not a remedy that can prevent future infringements of Plaintiff's fundamental right, leaving the government free to keep infringing and only partially relent when such appeals are filed. Second, as to the alternative VAF procedure, that was covered more extensively in another issue above so I incorporate by reference the entire VAF section farther above. Is conditioning relinquishment of one fundamental right in order to possibly reduce infringement on another fundamental right really an valid "alternative remedy"? Isn't this exactly the sort of "alternate remedy" that Justice Gorsuch was concerned about?

Is it a proper ground to dismiss even though dismissal provides no relief at all (merely adds a litigation cost burden) and the "alternative remedy" offers no relief at all for ongoing

infringements of a fundamental constitutional right for which the Constitution explicitly commands "shall not be infringed" ? If not, then this is reversible error.

As Justice Gorsuch described it, one ground to deny a *Bivens* action is if the Government already has provided alternative remedies *that protect plaintiffs*. I don't think allowing ongoing harms to plaintiffs and only making some aid available after each harm is what he had in mind. The order is reversible error insofar as "[t]he Court finds no authority to support that the courts, as opposed to Congress, are better positioned to create remedies for the Second Amendment violations asserted in Plaintiff's Complaint."

Thought experiment: What if Congress enacted a provision that required USPS to open and review every piece of mail and remove any objectionable contents (objectionable as identify by Congress) but Congress provided as the only alternate remedy that person who sent the mail could appeal to the USPS to dispute that the contents were objectionable and could receive what was removed if the appeal were successful. For responsible law abiding people who happened to send contents in the mail that Congress thought objectionable or that the USPS mistakenly thought qualified as objectionable based on the definition provide by Congress, would that alternative remedy preclude a *Bivens* action to prevent mail content removal (First Amendment violation) in the first instance? Plaintiff is seeking to eliminate the Second Amendment violation in the first instance and Congress has provided no remedy that addresses that harm.

4) **The order is in error for not allowing the "facial" declarations sought**

The Court "may declare the rights and other legal relations of any interested party seeking such declaration, **whether or not further relief is or could be sought.**" 28 U.S. Code § 2201 (emphasis added)

The order stated that "Plaintiff's claims under the Declaratory Judgment Act ask the Court to deem unconstitutional the provisions at issue in § 922, on their face **and as applied to Plaintiff**." (ECF 22 at 17) (emphasis added) To begin, an "as-applied" declaration of rights would be available under a *Bivens* claim; however, Plaintiff acknowledges that his seeking of an "as-applied" declaration is not available *under the Declaratory Judgment Act* but maintains that "facial" declarations of rights are available and are required to be issued under that Act.

The order stated that "the Court notes that "[a] declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." Plaintiff fully accepts that, and under the Declaratory Judgment Act cause of action, plaintiff does not seek any liability determination for any conduct, past, present, or future. See Complaint (ECF 1) at page 4 "More specifically: Under the Declaratory Judgment Act at 28 U.S.C. §§ 2201, *for declaratory relief*, CLARK **seeks a declaration of rights**." (emphasis added) Seeks a declaration of rights, full stop. No damages, no injunctive relief. Merely declaring rights does not declare liability provide an injunction for any specific instance of conduct, past, present or future. The Declaratory [Relief] Judgment Act does not provide for a "declaration of liability" or even for a "declaration of what conduct is lawful or unlawful". Only for a declaration of the legal status of rights (such as Second Amendment right) in relation to a law. The declarations sought by Plaintiff concerning "facial" constitutionality are not directed at any conduct but seeking for the court to provide *the legal status of the laws in relation to the constitution.* A declaration of facial unconstitutionality of a particular law allows everyone to better understand what their legal rights are in relation to that particular law and thus can better guide their *future conduct* to align with the law.

22

The "facial" declarations of legal rights sought by Plaintiff would not be a declaration of any liability for any past, present or future conduct not would it enjoin anyone from anything. The farthest reach of those "facial" declarations sought by Plaintiff would be that everyone may have more certainty on how to conduct themselves in order to stay within their rights if they so choose. Importantly, the declaration of a statute's unconstitutionality by a "declaration of rights" does not enjoin anyone though it may have the effect of curtailing prospective enforcement of the statute. And such declaration of unconstitutionality does not automatically nullify all orders and judgments issued in the past pursuant to the statute that is the subject of the declaration of rights. Backtracking a little, the order stated that "declaratory relief is improper to the extent Plaintiff seeks a declaration about Defendants' past conduct in running background checks when he attempted to purchase firearms." (ECF 22 at 17) Hopefully the above clarified that Plaintiff is not seeking "2201" relief concerning Defendants' conduct, whether past , present, or future. What Plaintiff seeks under "2201" is purely about "law" not facts, not liability, not conduct. No retrospective effect, only prospective knowledge of what the law is. And it is the exclusive domain of the judiciary to say what the law is. (discounting *Chevron*)

The order stated that

> "[m]oreover, declaratory relief "presupposes the existence of a judicially remediable right." Because Plaintiff fails to offer a cognizable substantive claim for relief under either § 1983 or *Bivens*, his request for declaratory relief is unavailable." (ECF 22 at 17)(footnote omitted)

Plaintiff would agree that *most* instances of "declaratory relief" does presuppose the existence of a judicially remediable right but there is a *narrow category* of declaratory relief, specifically where obtaining specific declaratory relief (such as a "declarations of legal rights") is a *statutorily authorized right to declaratory relief.* The "statutory right to obtain a declaration of

rights" is a remedial right. That is, the remedial right is "the statutory **right** to invoke the Declaratory Judgment Act to obtain a declaration of legal rights" can be remedied if that right is denied.

This can be seen in some quiet title actions, for example, where a party may wants to exercise the Declaratory Judgment Act because of a need to understand the boundary rights of their property to aid their future conduct like whether or not they are permitted to build a fence on the boundary line. Such a declaration of the boundary rights does not immediately address any particular conduct of anyone but provides a guide for future conduct. And if that declaration of rights is denied, that denial itself demands a remedy.

The order stated that "[b]ecause Plaintiff fails to offer a cognizable substantive claim for relief under either § 1983 or *Bivens*, his request for **declaratory relief is unavailable**." (ECF 22 at 17) (emphasis added)  This is error and is apparently the court perceives this as a "catch 22", that is, the conclusion of unavailability is predicated on lack of existence of a remedial right, but the statutory (2201) right to obtain a declaration of rights **is itself**  a remedial right.  And the order's rejection of Plaintiff's exercise of his statutory right (i.e. "2201"), when final, would be a cognizable substantive claim. There would be the real "catch 22" but for having appellate review to stop the cycle.

If the court demands that there be more than just the mere statutory right to a declaration of rights for a party to obtain the declaration of rights under 2201, what else would be required to be shown at the pleading stage? Perhaps, the party invoking the statutory right should have to show plausibility that their future conduct would arguably be affected by obtaining knowledge about the legal status in question.

Plaintiff is attempting to discern what future conduct he can engage in that would be protected by the Constitution. Can the Plaintiff refuse to answer incriminating questions on the Form 4473 without that being the sole cause of disallowing purchase of a firearm? Can Plaintiff go ahead and obliterate a serial number and be within the legal protection of the constitution or not? Can Plaintiff go ahead and use marijuana and be within the legal protection of the constitution or not? To be clear, Plaintiff is not asking these questions of the court, rather, Plaintiff is attempting to answer these questions for himself and seeking clarity of law. And Plaintiff is not expecting that likelihood of enforcement would change, nor is the court responsible for encouraging or discouraging enforcement. The court says what the law is, period. The rest is up to the government and the people to decide what they wish to do in light of what the law is (as they always do, but now with more clarity of the law).

Plaintiff future conduct would be arguably affected concerning the three declarations of law concerning the facial constitutionality of 922(k), 922(g)(3) and 922(t) insofar as 922(t) relates to Plaintiffs decisions whether or not to answer potentially incriminating questions on the Form 4473 used to implement that law. Lastly, if those three claims for declarations of legal rights are entertained by the court, Plaintiff would certainly be willingly waive pursuit of any other claims such as *Bivens*.

**5) The order is in error by not allowing leave to amend.**

Pursuant to Federal Rule of Civil Procedure 15(a), "[t]he court should freely give leave [to amend the pleadings] when justice so requires." See also *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 842 (10th Cir. 2003).

The Supreme Court has explained the circumstances under which denial of leave to amend is appropriate.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.
>
> *Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also Triplett v. LeFlore County, Okl.*, 712 F.2d 444, 446 (10th Cir. 1983).

The order stated that the Court "finds that *it would be futile* to allow him leave to amend."

(ECF 22 at 18) (emphasis added) That is a conclusion but that statement does not provide

any "justifying reason appearing" for that conclusion. Perhaps the reason is what the

order (ECF 22) stated at page 12,

> "While Plaintiff meets the first part of the injury test with respect to his pre-enforcement challenges—he alleges an intention to engage in courses of conduct arguably affected with a constitutional interest but proscribed by the statute—he fails to allege a credible threat of prosecution."

It is unclear how an amendment to include additional factual allegations concerning

enforcement of the challenged provisions could be considered futile if that is the only

reason for a conclusion of futility.

As to 922(g)(3), Plaintiff made factual allegations which identified cases of enforcement

not mentioned by the order. See mention of *United States v. Connelly* in the Complaint (ECF 1)

at page 90:

> "On April 6, 2023, the United States District Court for the Western District of Texas, in *United States v. Connelly*, Case No. 3:22-cr-00229-KC, issued an Order(Dkt. 101) stating that "§ 922(d)(3) does not withstand Second Amendment scrutiny for much the same reasons that§ 922(g)(3) does not."

26

Also see mention of *United States v. Harrison* in the Complaint (ECF 1) at page 90:

> "On Feb. 3, 2023, the United States District Court for the Western District of Oklahoma, in *United States v. Harrison*, Case No. CR-22-00328-PRW, issued an Order(Dkt. 36) granting a motion to dismiss(Dkt. 17) with prejudice on grounds that 18 U.S.C. § 922(g)(3) is unconstitutional and declining to reach vagueness claim (being unnecessary)."

That particular prosecution in *Harrison* terminated in a dismissal of the indictment after a thorough analysis of the constitutionality of 922(g)(3) which concluded the provision violated Harrison's Second Amendment right. While the indictment was dismissed, it nonetheless stands as yet another initiation of criminal enforcement action. With leave to amend, Plaintiff could include many more factual allegation of numerous other enforcement actions of 922(g)(3). Perhaps Plaintiff took it for granted that such enforcements were common knowledge. The order of dismissal even cited to such a case. See mention of *"United States v. Daniels* at ECF 22 at 13, footnote 43. At end, if more factual allegations of enforcement of challenged provisions is what is needed to convince the court of standing, the court ought to grant leave to amend to include those facts allegations. See *Leeper v. Allstate Insurance Co.*, 13-cv-03460 (D. Colo Mar. 12, 2014)

As to 922(k), Plaintiff filed a NOTICE OF SUPPLEMENTAL AUTHORITY (ECF 19) which identified an enforcement of serial number requirements which is related to 922(k) and Plaintiff could amend to include other enforcements of 922(k) including the criminal case of *United States v. Price*, 22-cr-00097 (S.D.W. Va. Oct. 12, 2022) and the criminal case of *United States v. Merriman*, S.D. Tex. case 5:22-cr-01439. In that *Merriman* case, a Magistrate report and recommendation (ECF 46) was filed on 10/16/2023 addressing a motion to dismiss the indictment and the report recommend dismissal based on the unconstitutionality of 922(k). See S.D. Tex 5:22-cr-01439, ECF 46 at 20:

It is **RECOMMENDED** that the District Court **ACCEPT** the Undersigned's finding that *Bruen's* first step is met, and the Second Amendment presumptively protects Merriman's right to possess a firearm with an obliterated serial number. It is **RECOMMENDED** that the District Court **ACCEPT** the Undersigned's finding that under step two of *Bruen,* the Government has not met their burden of demonstrating that Section 922(k) is consistent with this "Nation's historical tradition of firearm regulation." It is **RECOMMEND** that the District Court **GRANT** Merriman's Motion to Dismiss Indictment. (Dkt. No. 18).

Again, while the indictment was recommended to be dismissed, it nonetheless stands as yet another initiation of criminal enforcement action.

## DUE PROCESS

Due Process is at the heart of a party getting their day in court, yet the dismissed the complaint on an issue raised sua sponte by the court (not by party presentation) for which plaintiff was never allowed a day in court or even provided an opportunity to brief the issue prior to dismissal. While the court was able to cite to an unpublished opinion, that case is not an authoritative endorsement of the process the court engaged in.

## CONCLUSION

For the foregoing reasons, the court should vacate the order of dismissal.  And, if the court does not vacate the dismissal, then the court should grant leave to amend the Complaint.

I certify that the body of this motion does not exceed 9,200 words. ( 9,178 used )

Respectfully submitted,

Eric S. Clark
1430 Dane Ave
Williamsburg, Kansas 66095

## CERTIFICATE OF SERVICE

I hereby certify that service was made by

mailing true and correct copies of the foregoing

MOTION TO SET ASIDE JUDGMENTAND; ALTERNATIVELY,  TO SEEK LEAVE TO
AMEND THE COMPLAINT


by deposit in the United States Mail, Postage prepaid,

on  January 19, 2024

addressed to:


Christopher Allman
500 State Ave., Suite 360
Kansas City, KS 66101

and

Brian E. Vanorsby
1200 Epic Center
301 N. Main
Wichita, Kansas 67202


Eric S. Clark, 1430 Dane Ave, Williamsburg, Kansas [66095] 785-214-8904