IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FILED
U.S. District Court
District of Kansas

JAN 24 2024

Clerk, U.S. District Court
By_____ Deputy Clerk

ERIC S. CLARK, )
Plaintiff, )
    v. ) Case No. 23-2170-JAR-RES
MERRICK GARLAND, *et. al.* )
Defendants. )

**ATTACHMENT FOR**
**MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Petitioner CLARK's commentary on law and equity

1

PETITIONER CLARK'S COMMENTRY ON APPLICABLE LAW AND EQUITY

Congress amended the current federal question statute, 28 U.S.C § 1331, in 1976 and 1980 to eliminate the jurisdictional amount requirement. Pub. L. No. 94-574, 90 Stat. 2721; Pub. L. No. 96-486, 94 Stat. 2369. That allowed for invoking federal question jurisdiction without seeking monetary compensation or damages.

> "the implied equitable action grew up long before § 1983 was enacted and became an entrenched constitutional remedy long before § 1983 was discovered in 1961. The key question in discerning the effect of a statute on the implied equitable action is whether Congress, by providing one cause of action, intended to rescind all others. Were the Court to hold today that Congress meant to bar implied causes of action in 1871, the Court would somehow have to explain how the implied injunctive action remained a routine tool of constitutional enforcement during the ensuing ninety years." WILLIAM & MARY BILL OF RIGHTS JOURNAL [Vol. 22:1 at 50]

Traditionally, a federal equity court may grant a permanent injunction only upon a showing of irreparable injury and an inadequacy of legal remedies. *See Beacon Theatres v. Westover*, 359 U.S. 500, 506-07 (1959); *New York Guar. Co. v. Memphis Water Co.*, 107 U.S. 205, 214 (1883). Although this appears to require the presence of two distinct elements, the two concepts are closely interrelated and perhaps indistinguishable in application. The inadequacy of legal remedies to prevent or undo the plaintiff's injury presents a situation in which irreparable injury will occur unless equity intervenes.

Generally, the inadequacy of remedies at law in federal court warrants issuance of an Injunction regardless of whether state courts afford an adequate legal remedy. *See Di Giovanni v. Camden Fire Ins. Ass'n*, 296 U.S. 64, 69 (1935); *McConihay v. Wright*, 121 U.S. 201, 206 (1887).

This analysis recognizes the "inadequate" remedy at law rubric as the essential test for permanent injunctive relief and its view of irreparable injury is merely an example of an easily

recognizable ground for demonstrating the "inadequacy" of legal remedies. See *Lewis v. Baune*, 534 F.2d 1115, 1124 (5th Cir. 1976); See also 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2944, at 399 (1973).

The adequacy of the remedy at law entails a minimum threshold of sufficiency and certainty. Thus, a court may grant an injunction if the legal remedy is not as complete, practical, and efficient as that available in equity or if the presence of the remedy is doubtful. See, e.g., *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); § 2944, at 396. A remedy that leaves it only less likely that irreparable injuries will occur lacks indicia of certainty.

Nothing in the Constitution's history or tradition precludes a role for the courts in devising remedies that are necessary to enforce substantive rights. There is a long history that for injunctive relief for violation of constitutional rights, the court simply asks the "straightforward" question "whether [the] complaint alleges an ongoing violation of federal law." If such a violation exists, and Congress has not affirmatively barred the action, then a suit for injunctive relief will be available.

By 1930, the constitutional injunction was a well-established aspect of federal judicial power. At that time, one commentator would write that "[w]herever the point has been discussed, the courts have assumed that jurisdiction to enjoin the enforcement of unconstitutional statutes was clearly a part of the general equity powers, which inevitably followed from the English practice of enjoining acts beyond the scope of official authority." John E. Lockwood et al., The Use of the Federal Injunction in Constitutional Litigation, 43 HARV. L. REV. 426, 431 n. 23 (1930).

If federal question jurisdiction includes a free-standing power to issue injunctive relief, and Petitioner CLARK asserts that it does, then Congress may only bar such relief if it speaks

with exceptional clarity. That is Congress must carefully walk the thin grey line of separation of powers out in the open where everyone may have clear view of each step. See, e.g., *Elgin v. Dep't of Treasury*, 567 U.S. 1, 1325 S. Ct. 2126, 2141 (2012) (Alito, J., dissenting) (refusing to find that Congress deprived the federal courts of the power to issue injunctive relief because it is "established practice for th[e] Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution") (citing *Bell v. Hood*, 327 U.S. 678, 684 (1946)). See also, e.g., id.; *Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740, 749 (2012) (requiring explicit statement by Congress before finding federal courts lack jurisdiction under 28 U.S.C. § 1331). While Justice Alito was in dissent, the majority opinion held no more than that Congress can remove jurisdiction for some federal courts over a constitutionality claim by specifically identifying which court(or courts) still do retain jurisdiction of such claim. See this next excerpt from *Elgin* at III: (**emphasis** added)

> "We begin with the appropriate standard for determining whether a statutory scheme of administrative and judicial review provides the exclusive means of review for constitutional claims. **Petitioners argue that even if they may obtain judicial review of their constitutional claims before the Federal Circuit, they are not precluded from pursuing their claims in federal district court.** According to petitioners, the general grant of federal-question jurisdiction in 28 U. S. C. §1331, which gives district courts authority over constitutional claims, remains undisturbed unless Congress explicitly directs otherwise. In support of this argument, petitioners rely on *Webster* v. *Doe*, 486 U.S. 592, 603 (1988), which held that "where Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear." The Webster Court noted that this "heightened showing" was required "to avoid the 'serious constitutional question' that would arise **if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.**" *Ibid.* (quoting *Bowen* v. *Michigan Academy of Family Physicians*, 476 U.S. 667, 681, n. 12 (1986)). Petitioners contend that the CSRA does not meet this standard because it does not expressly bar suits in **district court.**
>
> Petitioners' argument overlooks a necessary predicate to the application of *Webster*'s heightened standard: a statute that purports to "deny **any** judicial forum

4

> for a colorable constitutional claim." 486 U. S., at 603. *Webster*'s standard **does not apply where Congress simply channels judicial review of a constitutional claim to a particular court**. We held as much in *Thunder Basin Coal Co.* v. *Reich*, 510 U.S. 200 (1994). In that case, we considered whether a statutory scheme of administrative review followed by judicial review in a federal appellate court precluded district court jurisdiction over a plaintiff's statutory and constitutional claims. *Id.*, at 206. We noted that the plaintiff's claims could be "meaningfully addressed in the Court of Appeals" and that the case therefore did "not present the 'serious constitutional question' that would arise if an agency statute were construed to preclude all judicial review of a constitutional claim." *Id.*, at 215, and n. 20 (quoting *Bowen*, *supra*, at 681, n. 12). Accordingly, we did not require *Webster*'s "heightened showing," but instead asked only whether Congress' intent to preclude district court jurisdiction was " 'fairly discernible in the statutory scheme.' " 510 U. S., at 207 (quoting *Block* v. *Community Nutrition Institute*, 467 U.S. 340, 351 (1984)).
>
> Like the statute in *Thunder Basin*, the CSRA does not foreclose all judicial review of petitioners' constitutional claims, but **merely directs that judicial review shall occur in the Federal Circuit**. Moreover, as we explain below, the Federal Circuit is fully capable of providing meaningful review of petitioners' claims. See *infra*, at 12–17. Accordingly, the appropriate inquiry is whether it is "fairly discernible" from the CSRA that Congress intended covered employees appealing covered agency actions to proceed exclusively through the statutory review scheme, even in cases in which the employees **raise constitutional challenges to federal statutes**."

In *Elgin*, it was also noted by the Court of Appeals that the statutory scheme "provides a forum—the Federal Circuit—that may adjudicate the constitutionality of a federal statute, and petitioners "were obliged to use it."

Complaints of excessive judicial interference found their way to Congress and, in the 1930s, Congress barred federal injunctive relief in **district courts** in three of the types of cases (rate, tax, and Labor cases). *See* Rate Injunction Act, Pub. L . No. 105-175, ch. 283, § 1, 48 Stat. 775 (1934) (codified as amended at 28 U.S.C. § 1342 (2006)); Tax Injunction Act, Pub. L. No. 75-332, ch. 726, § 1, 50 Stat. 738 (1937) (codified as amended at 28 U.S.C. § 1341 (2006)); Norris-LaGuardia Act, Pub. L. No. 72-65, ch. 90, § 1, 47 Stat. 70 (1932) (codified as amended at 29 U.S.C. §§ 101–04 (2006)). The Tax Injunction Act, 28 U.S.C. § 1341 ("TIA'), provides, with

5

regard to federal court jurisdiction, that "[t]he **district courts** shall not enjoin, suspend or restrain the assessment,levy or collection of any tax under State law **where a plain, speedy and efficient remedy may be had in the courts of such State**." And 28 U.S.C. § 1342 provides that "The **district courts** shall not enjoin, suspend or restrain the [...]"

By *forbidding* injunctions in certain cases, Congress implicitly *confirmed* that the courts have freestanding authority to issue injunctive relief without prior authorization unless Congress has specified some federal or State forum to obtain judicial review by some federal or State court(s). Merely restricting all federal district courts, leaves all federal appellate courts with jurisdiction.

In the present case, the statutory scheme of which 922(t) is a part does not explicitly identify any particular forum for **judicial review of a constitutional claim;** hence, district courts have jurisdiction to review the constitutionality of 922(t), likewise 922(g)(3) and 922(k) and may also provide an injunction if they are found to be unconstitutional.

See also BRIEF OF *AMICI CURIAE* FEDERAL COURTS SCHOLARS in Supreme Court docket No. 19A60, *Donald J. Trump, et al. v. Sierra Club, et al.* (docketed July 12, 2019) at 11-12:

> "**this Court has recognized that equitable review is traditionally available, without a statutory cause of action, to prevent injuries by officials whose actions violate the Constitution.** *See, e.g., Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010); *Bolling v. Sharpe*, 347 U.S. 497 (1954); *Ex parte Young*, 209 U.S. 123 (1908). As this Court has noted, "injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). If a party seeks prospective relief from an injury caused by a constitutional violation, a "private right of action directly under the Constitution" exists "as a general matter, without regard to the particular constitutional provisions at issue." *Free Enter. Fund*, 561 U.S. at 491 n.2. A statutory cause of action has never been required. (1988). "Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be

recognized and applied." *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946); *see SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018) (reaffirming "the strong presumption in favor of judicial review" of agency action, which "require[s] clear and convincing indications that Congress meant to foreclose review" (quotation marks omitted)). (footnote omitted)" (**emphasis added**)

May be found online at:
http://www.supremecourt.gov/DocketPDF/19/19A60/148831/20200728104737879_Sierra%20Club%20Brief%20-%20FINAL.pdf