**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ERIC S. CLARK,                              )
Plaintiff,                                  )
          v.                                )          Case No. 23-2170-JAR-RES
MERRICK GARLAND, *et. al.*                  )
Defendants.                                 )

## ATTACHMENT
## FOR
## MOTION FOR LEAVE OF COURT TO FILE FIRST AMENDED COMPLAINT

Proposed First Amended Complaint

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Eric S. Clark, | } |
| Plaintiff | } |
| v. | } Case No: 23-cv-2170 |
| Merrick Garland | } |
| in official capacity as U.S. Attorney General, | } |
| Merrick Garland | } |
| in personal capacity, | } |
| Unknown government agent #1 (UGA#1) | } |
| in personal capacity, | } |
| Unknown government agent #2 (UGA#2) | } |
| in personal capacity, | } |
| Unknown government agent #3 (UGA#3) | } |
| in personal capacity, | } |
| Unknown government agent #4 (UGA#4) | } |
| in personal capacity, | } |
| Unknown government agent #5 (UGA#5) | } |
| in personal capacity, | } |
| Unknown government agent #6 (UGA#6) | } |
| in personal capacity, | } |
| Unknown government agent #7 (UGA#7) | } |
| in personal capacity, | } |
| Defendants | } |

## FIRST AMENDED COMPLAINT

### *INTRODUCTION*

Plaintiff, Eric S. Clark (hereafter "CLARK") appears before this Court to

file this AMENDED COMPLAINT, requesting legal and equitable relief for

unconstitutional conduct committed by unknown government agents and the

Attorney General of the United States (hereafter collectively referred to as

"Defendants").

1

Merrick Garland in his official capacity is representative of the

United States as a party separate from also being a party in his personal

individual capacity. Merrick Garland, in his personal individual capacity,

and all named unknown government agents acted under color of law.

In seeking to acquire firearms for lawful purposes including self defense,

CLARK has attempted, on multiple occasions, to either purchase or transfer,

a firearm from a Federal Firearms Licensee ("FFL") which firearm had been in

interstate commerce by virtue of the FFL receiving the firearm from an out of state

party and; the firearms sought for these attempted purchases and transfers included

handguns and long guns and multiple purchases and transfers were *delayed for*

*periods of time* solely because of Defendants' enforcement of the statutes found at

18 U.S.C. §922(t) and, thus, CLARK's exercise of his fundamental right to keep

and bear arms was delayed to an extent that constitutes infringement on CLARK's

fundamental right to keep and bears arms which is protected by the Second and

Fourteenth Amendments of the Federal Constitution.

CLARK also intends to purchase, transfer, and possess firearms and

ammunition which have traveled in interstate commence in the future including a

handgun and appropriate associated ammunition for use with his lawful purposes

including self defense and; his right to do so which is protected by the Second

Amendment of the Federal Constitution *is likely to be infringed* by *time delays*

in CLARK's exercise of his fundamental right to keep and bear arms solely

because of Defendants' enforcement of the statutes found at 18 U.S.C. §922(t).

2

Because of, among other things, residual pain from severe injuries sustained from a fall from a ladder while trimming a tree with a chainsaw on May 16, 2022, CLARK has intent to use marijuana for potential pain relief in the future including in a State where such use is lawful if the Court enjoins enforcement of 18 U.S.C. §922(g)(3) against CLARK. That is, but for threat of enforcement of 18 U.S.C. §922(g)(3) against CLARK, CLARK would use marijuana.

CLARK has intent to engage in conduct of restoring a rusty firearm that can be purchased outside of CLARK's State of residence that will require CLARK to remove or alter or obliterate the rusty firearm's manufacturer's serial number in order to safely use the firearm for the purpose of self defense if the Court enjoins enforcement of 18 U.S.C. §922(k) against CLARK. That is, but for threat of enforcement of 18 U.S.C. §922(k) against CLARK, CLARK would use remove or alter or obliterate the rusty firearm's manufacturer's serial number of a firearm that has traveled in interstate commerce.

All of the challenged provisions are not pre-enforcement challenges as they have all been enforced against CLARK and/or other citizens in the past and continue to be enforced to the present day. The facts alleged herein of past enforcements against CLARK are not all inclusive but a representative description of actions of the defendants and suffices to show plausibility of the claims.

3

## BASIS FOR RELIEF SOUGHT

This is a civil action seeking legal and equitable relief for infringement of

CLARK's constitutionally protected fundamental right to keep and bear arms for

which Defendants actions have caused and likely will continue to cause.

CLARK's claims are brought under:

**(1)**     the Declaratory Judgment Act at 28 U.S.C. §§ 2201 et seq.

   *for declaratory relief* of a declaration of rights. ( See at § 2201, "any court

   of the United States, upon the filing of an appropriate pleading, may declare

   the rights and other legal relations of any interested party seeking such

   declaration, whether or not further relief is or could be sought.") and;

**(2)**     the Administrative Procedure Act 5 U.S.C. § 701, et seq.

   *for prospective injunctive relief.*

Future enforcement actions by one or more of the named defendants are *likely*

and are *likely to cause* continuing infringement and deprivation of the

constitutional right of CLARK to keep and bear arms. CLARK has also been

chilled from attempting future purchases of firearms at some FFLs who charge a

fee for any NICS check that results in providing an acknowledgement of "Denied"

to the FFL.

   The facts alleged herein describe past enforcements which not only violated

CLARK's right to keep and bear arms in the past but also had some chilling effect

on his exercise of his constitutional right to keep and bear arms in that CLARK

now attempts purchases of lawful firearms less frequently than CLARK otherwise

would because of the near certainty of the exercise of that right being futile and, thus, futile use of his time until the enforcement actions are enjoined pertaining to 18 U.S.C. §922(t).

## SPECIFIC RELIEF SOUGHT

CLARK prays for exercise of the court's power to provide equitable relief for ongoing violations of federal constitutional rights.

CLARK seeks a declaration that the entirety of 18 U.S.C. § 922 is unconstitutional facially because 18 U.S.C. § 922 is an unconstitutional exercise of congressional power as it exceeds the scope of the power provided under both, the Taxing Power the powers available pursuant to the Commerce Clause.

CLARK seeks a declaration that 18 U.S.C. §922(t) is unconstitutional facially because 18 U.S.C. § 922(t) is not consistent with the text, history and tradition of the Second Amendment's right to keep and bear arms and; CLARK seeks *permanent injunctive relief* of enjoining of all defendants and their agents from enforcing 18 U.S.C. §922 (t) directly or indirectly against CLARK.

CLARK seeks a declaration that 18 USC § 922(g)(3) is facially unconstitutional because it is not consistent with the text, history and tradition of the Second Amendment and; seeks prospective injunctive relief including enjoining of all Defendants and their agents from taking any future actions to enforce 18 U.S.C. §922(g)(3) against CLARK.

CLARK seeks a declaration that 18 USC § 922(k) is facially unconstitutional because it is not consistent with the text, history and tradition of

5

the Second Amendment and; seeks injunctive relief, i.e., the enjoining of all Defendants and other agents and officials of the federal government from taking any future actions to enforce 18 U.S.C. §922(k) against CLARK.

CLARK seeks a permanent injunction, precluding defendants and their agents from enforcement of 27 C.F.R. 478.102 and any other administrative regulations against CLARK which deprive CLARK of rights secured by the Constitution including the right to keep and bear arms.

### JURISDICTION AND VENUE

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This action arises under the Constitution of the United States; therefore, this court has jurisdiction under the Constitution of the United States, Article III, section 2 and under 28 U.S.C. §1331 (federal question) as the claim in this case arises pursuant to the Second Amendment of the Federal Constitution presenting a federal question concerning a federally protected right.

Venue is proper under 28 U.S.C. §1391(e)(1)(B) and (C), as a substantial part of the actions and/or omissions giving rise to the claims occurred in, and CLARK resides in, this judicial district, the District of Kansas.

If prevailing on the action, Petitioner may, but is not required, to move for costs pursuant to 28 U.S.C. §§ 1920 & 2412.

6

## THE PARTIES

CLARK is a natural person and citizen of Kansas and of the United States, residing in Williamsburg, Franklin County, Kansas.

Defendant Merrick Garland is being sued in his personal capacity and in his official capacity as the Attorney General of the United States with authority over the Department of Justice which includes agencies including the Federal Bureau of Investigations ("FBI") and Bureau of Alcohol, Tobacco, Firearm and Explosives ("BATFE"). Unknown government agents are sued in their personal capacity and they are subordinates of the Attorney General defendant.

## FACTUAL ALLEGATIONS

CLARK hereby alleges and incorporates by reference all of the factual allegations contained this complaint for each and every count or claim made in this complaint.

1.      Defendant Attorney General Merrick Garland issued, or continued to keep in effect, policies including 27 C.F.R. 478.102 or other administrative regulations, which required the other defendants to take actions which resulted in delays and denials of CLARK being able to purchase a firearm.

2.      The Attorney General is responsible for executing and administering laws of the United States, and has enforced, and is presently enforcing, through his policies, directives, and subordinate agents, the statutes complained of in this action, specifically, 18 U.S.C. §922 (t).

3.      Defendants unknown government agent #1-6 are all relevant employees

7

and officers of the United States for which the names and addresses of residence are currently unknown and they are all subordinates of the Attorney General defendant.

4.      Defendant Attorney General was at all times relevant to this Complaint responsible for subordinate employees, including all of the unknown government agents named as defendants.

5.      The Attorney General is charged under the law with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct of all subordinate employees will conform to the Constitution of the United States of America.

6.      At all times relevant to this cause, the unknown government agents acted in conformance with policies, practices, usage, and/or customs pertaining to, among other things, investigations and providing acknowledgements through the National Instant Criminal Background Check System (NICS) to inquiry inputs from Federal Firearm Licensees (FFLs).

7.      At all times relevant to this cause, all defendants were acting within the course and scope of their employment and under color of law.

8.      CLARK is, and has been, a resident of the State of Kansas for all times pertinent to the claims presented herein.

9.      CLARK is over the age of 21 years old, and was over the age of 21 years old for all times pertinent to the claims presented herein.

10.     CLARK is not, and has not been, under indictment for all times pertinent to the claims presented herein.

8

**11.**    CLARK is not, and has not been, a fugitive from justice for all times pertinent to the claims presented herein.

**12.**    CLARK is not, and has not been, an unlawful user of or addicted to any controlled substance for all times pertinent to the claims presented herein.

**13.**    CLARK does not possess and has not possessed a state issued ATF-qualified alternate permit (i.e., a substitute for a NICS background check) for all times pertinent to the claims presented herein.

**14.**    The FFLs at whose locations CLARK has been subjected to NICS background checks were open to the public at all times pertinent to the claims herein.

**15.**    CLARK would be required to pay $132.50, pursuant to K.S.A. 75-7c05(b)(2)  as a nonrefundable license fee in order for CLARK to obtain a license under the Personal and family protection act and there is no exception for indigent persons under that act.

**16.**    CLARK is not, and has not been, a "prohibited person", as that term applies to the statutes at issue, for all times pertinent to the claims presented herein.

**17.**    CLARK intends to engage in future purchases of handguns and appropriate associated ammunition from out of state private parties for use at his home for the purpose of self defense after the date of the filing of this complaint and beyond the final disposition of this case.

**18.**    CLARK, because of residual pain from severe injuries sustained from a fall from a ladder while trimming a tree with a chainsaw on

May 16, 2022 also presently intends to use marijuana for potential pain relief in the future including in a State where such use is lawful but is unlawful under Federal law. CLARK would have done so already but for the potential enforcement of 18 USC § 922(g)(3) against CLARK.

**19.**    CLARK does not possess a qualified alternative to the NICS background check.

**20.**    The Federal Bureau of Investigation  uses the associations individuals make as part of their analysis to determine to restrict the individual's fundamental rights such as the freedom to travel. See, e.g., *Federal Bureau of Investigation et al. v. Fikre* , 601 U. S. ____ (2024).

**21.**    For good reason, CLARK deliberately chooses to exercise his right of freedom of association to refrain from making an association with the FBI's VAF list (Voluntary Appeal File).

**22.**    CLARK sought to purchase a firearm at an FFL on 06/15/2021 and was denied because of the NICS background check as implemented in federal law at 18 U.S.C. §922 (t)(1)(A&B) and at  27 C.F.R. 478.102 or other administrative  regulations. On the Form 4473 used in connection with that attempted purchase, under the heading of  "The response initially provided by NICS or the appropriate State agency was:", the FFL checked the checkbox labeled "Denied" after receiving an acknowledgement from the NICS system. The FFL then refused to sell any firearm to CLARK because of that information.

**23.**    On 6/15/2021, Defendant UGA#1, pursuant to 27 C.F.R. 478.102 or other

administrative regulations, used the NICS system to provide "denied" status
information for the NICS background check being requested by the FFL in order to
determine if the FFL was permitted by law to allow CLARK to purchase a firearm.

**24.**    CLARK sent a letter dated June 16, 2021 to the FBI appealing that
"Denied" determination from the NICS system as then reflected on the
Form 4473by the FFL.

**25.**    CLARK received a letter from the FBI dated August 27, 2021 in
response to that appeal which contained in part:

"we have been able to determine you are eligible to possess or receive a
firearm. Your Kansas record has been updated. The FBI's Criminal
Justice Information Services (CJIS) Division Firearm-Related
Challenge Certificate is enclosed.

You must take this original certificate to the Federal Firearms Licensee
(FFL) who initiated your background check through the National
Instant Criminal Background Check System (NICS) to complete your
transaction. If more than 30 days have elapsed since the initial
background check, the FFL must recheck the NICS before allowing
the firearm transfer."

And the certificate referenced in that letter contained in part,

"Mr. Clark is eligible to possess or receive a firearm" and

"INITIATION DATE: 2021-06-15".

**26.**    CLARK then sought to purchase the same firearm at the same FFL on
09/15/2021 as he had on 06/15/2021 and was that purchase was
delayed because of the NICS background check as implemented in federal law at
18 U.S.C. §922 (t)(1)(A&B) and; on the Form 4473 used in connection with that

attempted purchase, under the heading of "The response initially provided by

NICS or the appropriate State agency was:", the FFL checked the checkbox labeled

"Delayed" after receiving an acknowledgement from the NICS system. The FFL

then refused to sell any firearm to CLARK because of that information but the FFL

also indicated that CLARK could purchase the firearm on or after 09/21/2021

(which was also reflected on the Form 4473 by the FFL).

**27.**    On 9/21/2021, Defendant UGA#2, pursuant to 27 C.F.R. 478.102 or other

administrative regulations, used the NICS system to provide "delayed" status

information for the NICS background check being requested by the FFL in order to

determine if the FFL was permitted by law to allow CLARK to purchase a firearm.

**28.**    On an earlier occasion, CLARK sought to purchase the a firearm on

08/16/2018 and was that purchase was delayed because of the NICS background

check as implemented in federal law at 18 U.S.C. §922(t)(1)(A&B) . On the

Form 4473 used in connection with that attempted purchase, under the heading of

"The response initially provided by NICS or the appropriate State agency was:",

the FFL checked the checkbox labeled "Delayed" after receiving an

acknowledgement from the NICS system. The FFL then refused

to sell any firearm to CLARK because of that information but the FFL also

indicated that CLARK could purchase the firearm on or after 08/22/2018

(which was also reflected on the Form 4473 by the FFL). But then, the

"Delayed" was changed to "Denied" on 08/21/2018 and CLARK was informed of

the new denial status by the FFL. Then, presumably, the status was changed again

12

to "Proceed" at an unknown time – "presumed" because after inquiry concerning

the denial on 08/22/2018 regarding NTN 100PN8CT4, CLARK received a

response from the FBI dated 08/24/2018 indicating they had no information

concerning the transaction and also stated:

"Please be advised, the NICS is required to destroy all proceeded
transactions within 24 hours of providing the final status to the
Federal Firearms Licensee. Likewise, the NICS is required to destroy
delayed transactions within 88 days from the date the transaction was
initiated. It is possible your transaction fits in one of these two
categories."

As there was no information available and it had not yet been 88 days,

it is reasonable to presume that the status was changed to "Proceed".

After this, on 09/20/2018, CLARK again sought to purchase the same firearm as

was attempted on 08/16/2018 and that purchase was delayed because of the NICS

background check as implemented in federal law at 18 U.S.C. §922 (t)(1)(A&B)

and; on the Form 4473 used in connection with that attempted purchase, under

the heading of "The response initially provided by NICS or the appropriate

State agency was:", the FFL checked the checkbox labeled "Delayed"

after receiving an acknowledgement from the NICS system. The FFL

then refused to sell any firearm to CLARK but the FFL also indicated

that CLARK could purchase the firearm on or after 09/26/2018 (which

was also reflected on the Form 4473 by the FFL).

**29.**     On 08/16/2018, Defendant UGA#3, pursuant to 27 C.F.R. 478.102 or other

administrative  regulations,  used the NICS system to provide a "delayed" status for

13

the NICS background check being requested by the FFL in order to determine if the FFL was permitted by law to allow CLARK to purchase a firearm.

On 08/21/2018, Defendant UGA#4, pursuant to 27 C.F.R. 478.102 or other administrative regulations, used the NICS system to provide a "denied" status for the NICS background check previously requested by the FFL on 08/16/2019. Sometime between 08/21/2018 and 8/24/2018, Defendant UGA#5, pursuant to 27 C.F.R. 478.102 or other administrative regulations, used the NICS system to provide a "proceed" status for the NICS background check which had been previously requested by the FFL on 08/16/2018.

On 09/20/2018, Defendant UGA#6, pursuant to 27 C.F.R. 478.102 or other administrative regulations, used the NICS system to provide a "delayed" status for the NICS background check being requested by the FFL in order to determine if the FFL was permitted by law to allow CLARK to purchase a firearm.

**30.**    CLARK has previously been denied several times and delayed numerous times from being able to purchase and transfer firearms at various FFLs, including other delays of over 180 days, because of the NICS background check as implemented in federal law at 18 U.S.C. §922 (t)(1)(A&B) including on 07/17/2019, 01/26/2023, and 3/8/2023, 4/5/2023, each time Delayed. This is not an all inclusive list but exemplary of the situation CLARK faces in relation to burden on his right to keep and bear arms because of the operation of the NICS background check system and requirements in federal law to apply that actions to CLARK's attempts to purchase or transfer a firearm.

**31.**     CLARK is frequently delayed or denied under the NICS system even

though he has received multiple letters from the FBI reversing "Denied"

determinations which specifically state that CLARK is eligible to

purchase a firearm. One such letter was dated August 29, 2016 from

NICS Section, CJIS Division which contains in part :

"We have been able to determine <u>you are eligible to possess or receive a
       firearm</u>. The FBI Criminal Justice Information Services (CJIS)
       Division's NICS Section Firearm Appeal Certificate is enclosed."
       (underline in original)

And the Certificate referenced in that letter contained in part,

"Mr. Clark is eligible to possess and receive a firearm" and

"INITIATION DATE: February 8, 2016"

**32.**     In January or February of 2023, CLARK sought to acquire a

firearm (long gun - shotgun) for use of lawful self defense from

an FFL but terminated that purchase attempt when informed that a

deposit was required before the NICS check (as required by

18 U.S.C. §922(t)) would be performed and informed that

if the FFL received a "Denied" acknowledgement response from NICS

then CLARK would be required to pay a processing fee of $50.00.

**33.**     CLARK would attempt to exercise CLARK's right to purchase lawful

firearms more frequently but for the near certainty of that exercise being

futile because of the enforcement of 18 U.S.C. §922(t).

**34.**     CLARK intends to become a user of  marijuana for potential pain relief

in the near future including use of the substance in a State where such use
is lawful but that use is unlawful under Federal law.

**35.**    CLARK has intent to engage in conduct of restoring a rusty firearm that
can be purchased outside of CLARK's State of residence that will require
CLARK to remove or alter or obliterate the rusty firearm's
manufacturer's serial number in order to safely use the firearm for the
purpose of self defense in his home.

**36.**    On January 17, 2024, CLARK sought to purchase a firearm and that
purchase was time delayed for well over an hour because of the NICS background
check as implemented in federal law at 18 U.S.C. § 922(t)(1)(A&B) and; on the
Form 4473 used in connection with that attempted purchase, under the heading of
"The response initially provided by NICS or the appropriate State agency was:",
the FFL checked the checkbox labeled "Delayed" after receiving an
acknowledgement from the NICS system. The FFL then refused to sell any firearm
to CLARK because of that information and the FFL also, by the FFL writing
"1-23-24" on the same Form 4473, indicated that  CLARK could purchase the
firearm on or after "1-23-24" (approximately four and a half days later). For some
time period after the FFL notified CLARK that the FFL would not sell CLARK a
firearm. CLARK was unable to exercise his right to keep and bear arms for self
defense for at least an hour during his travel to his home. The travel time involved
in attempting to make this purchase of a firearm consumed about 2 hours of time

16

just for the round trip from Plaintiff's home to the FFL and back.

**37.**    On 1/17/2024, Defendant UGA#7, pursuant to 27 C.F.R. 478.102 or other

administrative regulations, used the NICS system to provide "delayed" status

information for the NICS background check being requested by the FFL in order to

determine if the FFL was permitted by law to allow CLARK to purchase a firearm.

**38.**    On 1/17/2024, Defendant UGA#7, pursuant to 27 C.F.R. 478.102 or other

administrative regulations, used the NICS system to provide "delayed" status

information for the NICS background check being requested by the FFL in order to

determine if the FFL was permitted by law to allow CLARK to purchase a firearm.

**39.**    On March 15, 2024, CLARK sought to purchase a firearm and that

purchase was time delayed because of the requirement for a NICS background

check as implemented in federal law at 18 U.S.C. § 922(t)(1)(A&B). That delay

was at least twenty minutes and CLARK had appointments to keep and, thus,
had to leave before the FFL would sell CLARK a firearm.

**40.**    Past enforcements of 18 U.S.C. 922(k) include the criminal case of *United*

*States v. Price*, 22-cr-00097 (S.D.W. Va. Oct. 12, 2022) and the criminal case of

*Unite States v. Merriman*, S.D. Tex. case 5:22-cr-01439. In that *Merriman* case,

a Magistrate report and recommendation (ECF 46) was filed on 10/16/2023

addressing a motion to dismiss the indictment and the report recommend dismissal

based on the unconstitutionality of 922(k).  See S.D. Tex 5:22-cr-01439,

17

ECF 46 at 20:

> It is **RECOMMENDED** that the District Court **ACCEPT** the
> Undersigned's finding that *Bruen's* first step is met, and the
> Second Amendment presumptively protects Merriman's right to
> possess a firearm with an obliterated serial number.
> It is **RECOMMENDED** that the District Court **ACCEPT** the
> Undersigned's finding that under step two of *Bruen,* the
> Government has not met their burden of demonstrating that
> Section 922(k) is consistent with this "Nation's historical
> tradition of firearm regulation."
> It is **RECOMMEND** that the District Court **GRANT**
> Merriman's Motion to Dismiss Indictment. (Dkt. No. 18).

**41.**    On Feb. 3, 2023, the United States District Court for the Western District

of Oklahoma, in *United States v. Harrison*, Case No. CR-22-00328-PRW, issued

an Order(Dkt. 36) granting a motion to dismiss(Dkt. 17) with prejudice on grounds

that 18 U.S.C. § 922(g)(3) is unconstitutional and declining to reach vagueness

claim (being unnecessary).

**42.**    On April 6, 2023, the United States District Court for the Western District of

Texas, in *United States v. Connelly*, Case No. 3:22-cr-00229-KC, issued an

Order(Dkt. 101) stating that "§ 922(d)(3) does not withstand Second Amendment

scrutiny for much the same reasons that § 922(g)(3) does not."

**43.**    On October 12, 2022, the United States District Court for the Southern

District of West Virginia case, No. 2:22-cr-00097, issued an Opinion and Order

which contained in pertinent part:

18

"The burden falls on the Government to "affirmatively prove that its firearms regulation is part of the [or analogous to a] historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. The Government has not done so here, and I have no choice but to find 18 U.S.C. § 922(k) unconstitutional." *Id.*

**44.**          **DISCUSSION OF SOME APPLICABLE LAW**

*THE RIGHT WAS OPERATIVE DURING NICS BACKGROUND CHECKS*

Nothing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms." *New York State Rifle & Pistol Association v. Bruen*, 142 S.Ct. 2111 (2022). "The Second Amendment's plain text thus presumptively guarantees petitioners" *Id.*, like CLARK, 'a right to "bear" arms in public for self-defense.' *Id.* Further, *District of Columbia v. Heller*, 554 U.S. 570,584 (2008) confirmed that the right to "bear arms" includes "being armed and ready for offensive or defensive action in a case of conflict with another person." and encompasses an "individual right to possess and carry weapons in case of confrontation," *Id.* at 592. "and confrontation can surely take place outside the home." *New York State Rifle & Pistol Association v. Bruen*, 142 S.Ct. 2111 (2022) Thus, while CLARK was located in an FFL locations that are open to the public, the right was operative even during attempts to purchase or transfer firearms using the services of those FFLs and delay caused by running a NICS background check delayed CLARK's exercise of his individual right to keep and bear arms.

*DE MINIMUS VIOLATION OF A FUNDAMENTAL RIGHT*

The Court should not engage in balancing the effects on CLARK to determine if a violation of the right to keep and bear arms was *de minimus* or not.

What about CLARK's right to free speech? What if CLARK wanted to speak

at a city council meeting that allows public input and CLARK had properly

followed the process to sign up to speak for the three allotted minutes like other

members of the public did at the same meeting, but as CLARK approached the

podium, the mayor says "I see this is your first time here to speak so please sit back

down or else we'll have the sheriff remove you". No violation of CLARK's right

because it was *de minimus* in effect, only disallowed CLARK's protected speech

for three minutes? What about CLARK's right to counsel? Could CLARK be

deprived of counsel during the two minute colloquy of entering a guilty plea?

What about CLARK's right to a public jury trial? Could the court deem the facts

were so overwhelming that the judge is justified in entering a directed verdict of

guilt? What about CLARK's due process right for deprivation of life, liberty or

property? Can an officer arrest CLARK because he has a hunch that CLARK is

guilty of something? Finally, what about CLARK's right of self-defense and right

to keep and bear arms? What if CLARK was shot and killed because his purchase

of a firearm was delayed for three days? What if CLARK was NOT shot and killed

because his purchase of a firearm was delayed for three days? Does the Second

Amendment require balancing those effects to determine if the right was violated?

While it should not matter to the analysis, within the recent past (inside of

the last 10 years) CLARK has had a number of separate vandalisms at his house
for which the perpetrator(s) are unknown including acts of fire bombing a trailer
(wood platform on steel frame - burned so much that it melted the tires) parked
near the road at the end of a driveway, black spray painted "Dead" on a white
welcome sign with red lettering near the road, spray painted KKK and swastika
symbol on the road in front of CLARK's house (no neighbors for 100 yards in
either direction), spray painted huge F.U. on side of the bed of CLARK's 1971
GMC pickup truck, ran over and destroyed a large "support our troops" sign near
the mail box by the road and a the welcome sign was run over and destroyed. Does
CLARK have to show good cause to fall within the protection of the Second
Amendment's protection? Does CLARK have to show that the delay in exercising
his right actually caused some harm or injury to his person or property?

For a responsible law-abiding citizen, for whom the requisite protection of
constitutionally protect due process rights, including a meaningful opportunity to
be heard, have not been afforded to authorize deprivation of any enumerated
fundamental constitutional right: 1) what if that citizen is restricted under color of
law from giving his or her opinion in a public meeting for three minutes and
2) what if that citizen is restricted under color of law from defending his or her life
with a firearm in public for three minutes : which of these violations of enumerated
fundamental rights should be considered *de minimus* and why?

21

At end, as can be seen in examples above, any *de minimus* determination necessarily requires the court to weigh how much of a right is valuable enough to protect which is nothing more than a judicially initiated balancing test and not the balance applied by the people through enactment of a "shall not be infringed" clause in the Second Amendment. Such judicially administered balancing tests can be prone to causing "death by a thousand cuts" without the court even intending that outcome. A similar consideration can be seen in the 1822 Kentucky case of *Bliss* where that court plainly rejected the slippery slope that necessarily inheres when initiating any incremental incursion on what might otherwise be a fully protected fundamental right.

## *LAW AND EQUITY*

Congress amended the current federal question statute, 28 U.S.C § 1331, in 1976 and 1980 to eliminate the jurisdictional amount requirement. Pub. L. No. 94-574, 90 Stat. 2721; Pub. L. No. 96-486, 94 Stat. 2369. That allowed for invoking federal question jurisdiction without seeking monetary compensation or damages.

> "the implied equitable action grew up long before § 1983 was enacted and became an entrenched constitutional remedy long before § 1983 was discovered in 1961. The key question in discerning the effect of a statute on the implied equitable action is whether Congress, by providing one cause of action, intended to rescind all others. Were the Court to hold today that Congress meant to bar implied causes of action in 1871, the Court would somehow have to explain how the implied injunctive action remained a routine tool of constitutional

22

enforcement during the ensuing ninety years." WILLIAM & MARY
BILL OF RIGHTS JOURNAL [Vol. 22:1 at 50]

Traditionally, a federal equity court may grant a permanent injunction only upon a

showing of irreparable injury and an inadequacy of legal remedies. *See Beacon*

*Theatres v. Westover*, 359 U.S. 500, 506-07 (1959); *New York Guar. Co. v.*

*Memphis Water Co.*, 107 U.S. 205, 214 (1883).  Although this appears to require

the presence of two distinct elements, the two concepts are closely interrelated and

perhaps indistinguishable in application. The inadequacy of legal remedies to

prevent or undo the plaintiff's injury presents a situation in which irreparable

injury will occur unless equity intervenes.

Generally, the inadequacy of remedies at law in federal court warrants

issuance of an injunction regardless of whether state courts afford an adequate

legal remedy. *See Di Giovanni v. Camden Fire Ins. Ass'n*, 296 U.S. 64, 69 (1935);

*McConihay v. Wright*, 121 U.S. 201, 206 (1887). This analysis recognizes the

"inadequate" remedy at law rubric as the essential test for permanent injunctive

relief and its view of irreparable injury is merely an example of an easily

recognizable ground for demonstrating the "inadequacy" of legal remedies. See

*Lewis v. Baune*, 534 F.2d 1115, 1124 (5th Cir. 1976); See also 11 C. WRIGHT &

A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2944, at 399 (1973).

The adequacy of the remedy at law entails a minimum threshold of

sufficiency and certainty. Thus, a court may grant an injunction if the legal remedy

is not as complete, practical, and efficient as that available in equity or if the

presence of the remedy is doubtful. See, e.g., *American Life Ins. Co. v. Stewart*,

300 U.S. 203, 214 (1937); § 2944, at 396. A remedy that leaves it only less likely

that irreparable injuries will occur lacks indicia of certainty. Nothing in the

Constitution's history or tradition precludes a role for the courts in devising

remedies that are necessary to enforce substantive rights. There is a long history

that for injunctive relief for violation of constitutional rights, the court simply asks

the "straightforward" question "whether [the] complaint alleges an ongoing

violation of federal law." If such a violation exists, and Congress has not

affirmatively barred the action, then a suit for injunctive relief will be available.

By 1930, the constitutional injunction was a well-established aspect of

federal judicial power. At that time, one commentator would write that "[w]herever

the point has been discussed, the courts have assumed that jurisdiction to enjoin the

enforcement of unconstitutional statutes was clearly a part of the general equity

powers, which inevitably followed from the English practice of enjoining acts

beyond the scope of official authority." John E. Lockwood et al., The Use of the

Federal Injunction in Constitutional Litigation, 43 HARV. L. REV. 426, 431

n. 23 (1930).

If federal question jurisdiction includes a free-standing power to issue injunctive relief, and Petitioner CLARK asserts that it does, then Congress may only bar such relief if it speaks with exceptional clarity. That is Congress must carefully walk the thin grey line of separation of powers out in the open where everyone may have clear view of each step. See, e.g., *Elgin v. Dep't of Treasury*, 567 U.S. 1, 1325 S. Ct. 2126, 2141 (2012) (Alito, J., dissenting) (refusing to find that Congress deprived the federal courts of the power to issue injunctive relief because it is "established practice for th[e] Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution") (citing *Bell v. Hood*, 327 U.S. 678, 684 (1946)). See also, e.g., id.; *Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740, 749 (2012) (requiring explicit statement by Congress before finding federal courts lack jurisdiction under 28 U.S.C. § 1331). While Justice Alito was in dissent, the majority opinion held no more than that Congress can remove jurisdiction for some federal courts over a constitutionality claim by specifically identifying which court(or courts) still do retain jurisdiction of such claim. See this next excerpt from *Elgin* at III: (**emphasis added**)

> "We begin with the appropriate standard for determining whether a statutory scheme of administrative and judicial review provides the exclusive means of review for constitutional claims. **Petitioners argue that even if they may obtain judicial review of their constitutional claims before the Federal Circuit, they are not precluded from**

25

**pursuing their claims in federal district court.** According to petitioners, the general grant of federal-question jurisdiction in 28 U. S. C. §1331, which gives district courts authority over constitutional claims, remains undisturbed unless Congress explicitly directs otherwise. In support of this argument, petitioners rely on *Webster* v. *Doe*, 486 U.S. 592, 603 (1988), which held that "where Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear." The Webster Court noted that this "heightened showing" was required "to avoid the 'serious constitutional question' that would arise **if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.**" *Ibid.* (quoting *Bowen* v. *Michigan Academy of Family Physicians*, 476 U.S. 667, 681, n. 12 (1986)). Petitioners contend that the CSRA does not meet this standard because it does not expressly bar suits in **district court.**

Petitioners' argument overlooks a necessary predicate to the application of *Webster*'s heightened standard: a statute that purports to "deny **any** judicial forum for a colorable constitutional claim." 486 U. S., at 603. *Webster*'s standard **does not apply where Congress simply channels judicial review of a constitutional claim to a particular court.** We held as much in *Thunder Basin Coal Co.* v. *Reich*, 510 U.S. 200 (1994). In that case, we considered whether a statutory scheme of administrative review followed by judicial review in a federal appellate court precluded district court jurisdiction over a plaintiff's statutory and constitutional claims. *Id.*, at 206. We noted that the plaintiff's claims could be "meaningfully addressed in the Court of Appeals" and that the case therefore did "not present the 'serious constitutional question' that would arise if an agency statute were construed to preclude all judicial review of a constitutional claim." *Id.*, at 215, and n. 20 (quoting *Bowen*, *supra*, at 681, n. 12). Accordingly, we did not require *Webster*'s "heightened showing," but instead asked only whether Congress' intent to preclude district court jurisdiction was " 'fairly discernible in the statutory scheme.' " 510 U. S., at 207 (quoting *Block* v. *Community Nutrition Institute*, 467 U.S. 340, 351 (1984)).

Like the statute in *Thunder Basin*, the CSRA does not foreclose all judicial review of petitioners' constitutional claims, but **merely directs that judicial review shall occur in the Federal Circuit**. Moreover, as we explain below, the Federal Circuit is fully capable of providing

meaningful review of petitioners' claims. See *infra*, at 12–17. Accordingly, the appropriate inquiry is whether it is "fairly discernible" from the CSRA that Congress intended covered employees appealing covered agency actions to proceed exclusively through the statutory review scheme, even in cases in which the employees **raise constitutional challenges to federal statutes**."

In *Elgin*, it was also noted by the Court of Appeals that the statutory scheme "provides a forum—the Federal Circuit—that may adjudicate the constitutionality of a federal statute, and petitioners "were obliged to use it."

Complaints of excessive judicial interference found their way to Congress and, in the 1930s, Congress barred federal injunctive relief in **district courts** in three of the types of cases (rate, tax, and Labor cases). *See* Rate Injunction Act, Pub. L . No. 105-175, ch. 283, § 1, 48 Stat. 775 (1934) (codified as amended at 28 U.S.C. § 1342 (2006)); Tax Injunction Act, Pub. L. No. 75-332, ch. 726, § 1, 50 Stat. 738 (1937) (codified as amended at 28 U.S.C. § 1341 (2006)); Norris-LaGuardia Act, Pub. L. No. 72-65, ch. 90, § 1, 47 Stat. 70 (1932) (codified as amended at 29 U.S.C. §§ 101–04 (2006)). The Tax Injunction Act, 28 U.S.C. § 1341 ("TIA'), provides, with regard to federal court jurisdiction, that "[t]he **district courts** shall not enjoin, suspend or restrain the assessment,levy or collection of any tax under State law **where a plain, speedy and efficient remedy may be had in the courts of such State**." And 28 U.S.C. § 1342 provides that "The **district courts** shall not enjoin, suspend or restrain the [...]"

By *forbidding* injunctions in certain cases, Congress implicitly *confirmed* that the courts have freestanding authority to issue injunctive relief without prior authorization unless Congress has specified some federal or State forum to obtain judicial review by some federal or State court(s). Merely restricting all federal district courts, leaves all federal appellate courts with jurisdiction.

In the present case, the statutory scheme of which 922(t) is a part does not explicitly identify any particular forum for **judicial review of a constitutional claim;** hence, district courts have jurisdiction to review the constitutionality of 922(t), likewise 922(g)(3) and 922(k) and may also provide an injunction if they are found to be unconstitutional. See also BRIEF OF *AMICI CURIAE* FEDERAL COURTS SCHOLARS in Supreme Court docket  No. 19A60, *Donald J. Trump, et al. v. Sierra Club, et al.* (docketed July 12, 2019) at 11-12:

> **"this Court has recognized that equitable review is traditionally available, without a statutory cause of action, to prevent injuries by officials whose actions violate the Constitution.** *See, e.g.*, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010); *Bolling v. Sharpe*, 347 U.S. 497 (1954); *Ex parte Young*, 209 U.S. 123 (1908). As this Court has noted, "injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). If a party seeks prospective relief from an injury caused by a constitutional violation, a "private right of action directly under the Constitution" exists "as a general matter, without regard to the particular constitutional provisions at issue." *Free Enter. Fund*, 561 U.S. at 491 n.2. A statutory cause of action has never been required. (1988). "Unless a statute in so many words, or by a necessary and

28

inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946); *see SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018) (reaffirming "the strong presumption in favor of judicial review" of agency action, which "require[s] clear and convincing indications that Congress meant to foreclose review" (quotation marks omitted)). (footnote omitted)" (**emphasis added**)

### *RELIEF CONSIDERATIONS*

If enforcement of the challenged statutory provisions are unconstitutional as applied to CLARK, then they must be enjoined in their entirety because enjoining in regard to CLARK alone would necessarily entail improperly keeping a registration of which citizens are permitted to obtain a firearms and the use of such means (HOW) was not the historical means employed to address the societal problem of violence committed with firearms(WHY). Beyond that, such registration lists would be prone to becoming inaccurate as there is no reasonably effective way conceivable to maintain such a list without intruding into other protected interests of the citizenry. Lastly, as pertaining to the regulations, CLARK is similarly situated in all relevant aspects to all other law abiding responsible citizens and making CLARK's personal identifying information to be accessible by all FFLs in order to ensure they know CLARK is permitted to obtain firearms would be an invasion of CLARK's reasonable expectation of privacy.

29

### *DEMAND FOR JURY TRIAL*

CLARK demands respect of his right to a trial by jury on the facts so triable.

### *DESIGNATION OF PLACE OF TRIAL*

CLARK designates Kansas City as the location for trial in this matter.

Respectfully submitted,

Eric S. Clark
1430 Dane Avenue
Williamsburg, Kansas 66095
785-214-8904
eric@whitestonepublishing.org

30